In re MAIER BREWING CO.
No. 37544–H.

District Court, S. D. California, Central
Division.
May 3, 1941.

Baldwin Robertson, of Los Angeles, Cal., for debtor.

Musick & Burrell, by Harold H. Streight, all of Los Angeles, Cal., for trustee.

Sherman Anderson, of Los Angeles, Cal., for petitioner Pacific Indemnity Co.

HOLLZER, District Judge.

This cause is a corporate reorganization proceeding, commenced through the filing of a creditors' petition on December 4, 1940. Said petition contained the requisite jurisdictional recitals, including allegations to the effect that a proceeding to foreclose a mortgage against the greater portion of the property of the debtor corporation was then pending. On December 28, 1940, the court approved said petition and appointed a trustee, together with a special additional trustee, to take charge of the debtor's estate. On the same day, these trustees qualified and they are now acting as such.

On November 28, 1940, Pacific Indemnity Company, hereinafter referred to as petitioner, commenced an action in the Superior Court of the State of California, in and for the County of Los Angeles, against the within named debtor and others to foreclose a chattel mortgage executed by debtor on December 15, 1938, and also to foreclose a certain lien represented by an assignment executed by debtor on May 22, 1940. This chattel mortgage had been recorded May 13, 1939, and constituted a lien against substantially all of the plant machinery, equipment and office furniture belonging to said debtor, while said assignment constituted a lien against the principal labels and trade-marks used by said debtor in the operation of its business. Concurrently with the giving of said chattel mortgage, said debtor had executed a certain deed of trust, likewise recorded May 13, 1939, whereby it conveyed to a certain trustee for the benefit of petitioner certain real property, including the land and buildings upon which debtor's plant is located, and also certain residential property. The aforementioned chattel mortgage, assignment and deed of trust had been executed to secure one and the same obligation, to-wit, a certain note payable to petitioner in the principal sum of $81,852.08.

This note is, by its terms, payable as to the principal thereof on October 1, 1943, while interest thereon is payable quarterly. Said instrument further provides that should default be made in the payment of any installment of interest when due, the whole sum of principal and interest shall become immediately due at the option of the holder of said note.

In its complaint filed in said foreclosure action, petitioner alleged that said debtor had defaulted in the payment of the installment of interest which became due and payable on September 15, 1940, and that petitioner thereby elected to declare the entire sum of principal and interest immediately due upon said note. While in said complaint it is stated that said debtor had executed the aforementioned chattel mortgage and assignment to secure the payment of said note, no mention is made of the fact that said debtor had also executed the aforementioned trust deed to secure the same note. It is also there alleged that the aforementioned chattel mortgage, a copy of which is attached to said complaint, provides, in part, that if said debtor shall de-

fault in the payment of any obligation or indebtedness secured by said mortgage, then petitioner may take possession of the mortgaged property and care for or manage the same and may be entitled to the appointment of a receiver to assist it in performing any of said acts.

In said foreclosure complaint it is further alleged that the chattel mortgage given to petitioner is subject to the prior chattel mortgage in favor of the bank as above mentioned, also—but this is stated only on information and belief—that the personal property described in the chattel mortgage held by petitioner is insufficient security because petitioner holds a second lien thereon, and that the value of the debtor's interest in said mortgaged personal property, because of prior liens hereinafter described thereon in favor of the Bank of America National Trust and Savings Association, is insufficient to secure the payment of the principal and interest due and owing upon the aforementioned note given to petitioner. In addition, it is there alleged that the chattel mortgage given to petitioner provides that all remedies allowed to it under the law and by the terms of said chattel mortgage are cumulative, and may be enforced without reference to time or manner of foreclosure or enforcement of any other security for said indebtedness.

Although the prayer of the complaint in said foreclosure suit contains a request for the appointment of a receiver to take possession of and control over the mortgaged property, no hearing has been held nor has any motion been made for the appointment of a receiver.

The chattel mortgage previously mentioned is junior to two certain chattel mortgages each executed on September 15, 1938, in favor of Bank of America National Trust and Savings Association, hereinafter referred to as the Bank, one of said mortgages being security for the debtor's note in the principal amount of $120,000 payable in installments, and the other being security for the debtor's note in the principal sum of $7,000, both of said prior mortgages having been recorded October 8, 1938. Likewise the aforementioned trust deed is, as to the land and buildings upon which debtor's plant is located, junior to a certain trust deed executed September 15, 1938, in favor of said bank, and given to secure the payment of said $120,000 note, upon which latter note there is still owing approximately $78,000.

In addition to said prior liens held by said bank, there are other prior claims and liens against the properties securing said indebtedness owing to petitioner, said prior claims and liens consisting of taxes amounting to about $18,000, Federal tax liens amounting to approximately $11,500, and also balances totalling about $37,000 owing on personal property covered by conditional sales contracts.

The debtor has filed a return to the order to show cause issued upon the petition of Pacific Indemnity Company, and in its answer has raised several defenses, any one of which, if determined in favor of debtor, would require a denial of said petition.

One of such defenses is in substance that it has cured the default which constituted the sole ground upon which petitioner bases its right to commence and prosecute said foreclosure suit. In support of the latter defense it is alleged in the answer that on December 13, 1940, the debtor tendered to petitioner the sum of $1,296.38, together with a letter informing petitioner that said sum was in payment of the interest due on September 15, 1940, interest on said interest to date, the attorney's fee as provided by Section 2924c of the Civil Code of California, the fee for the filing of said foreclosure suit, service fees, notary's and miscellaneous expenses, and the interest due on December 15, 1940. It is also alleged that petitioner refused said tender upon the sole ground that the amount of money so tendered was insufficient to pay the entire principal and interest, that thereupon the debtor, on the same day, deposited said sum to the credit of petitioner in a certain bank, and that pursuant to the provisions of Section 1500 of the Civil Code of California debtor immediately notified petitioner that said money had been so deposited in said bank with instructions to pay the same to petitioner. It is further alleged that said money still remains on deposit to the credit of petitioner.

Another defense places in issue the contention made by petitioner to the effect that the indebtedness owing by debtor to it is not adequately secured. Upon that issue the debtor asserts that the reasonable market value of the real estate and personal property, on which petitioner claims a lien, greatly exceeds the total of the indebtedness of said debtor to said bank and to petitioner, and that the security claimed by petitioner is more than adequate to repay to it the entire sum that is or could be due

it under the terms of said note, trust deed and chattel mortgage.

While at this stage of the litigation it is unnecessary to outline the nature of the other defenses interposed by the debtor, much less to discuss the merits thereof, it should be pointed out that during the oral argument · counsel for petitioner conceded that by said Superior Court action petitioner is seeking to foreclose a chattel mortgage against the great bulk of the machinery and equipment necessary to maintain the debtor as an operating enterprise, that is to say, the heart of the machinery and equipment comprising the debtor's brewery plant. In other words, if the mortgaged property were to be sold through such foreclosure, it would be impossible for the debtor to continue in business.

Likewise, it became clear during the oral argument that, while counsel differed as to the legal effect thereof, it could not be disputed that the debtor had undertaken to cure the alleged default in the manner hereinbefore described.

As stated by its counsel, the position of petitioner is that it is entitled to proceed with the prosecution of said foreclosure suit, because the same was filed prior to the commencement of the instant reorganization proceeding and is based upon a lien created more than four months prior to the filing of this proceeding; that by virtue of such priority the state court acquired constructive possession of the mortgaged personal property; that thereby, under the rule of comity, the state court obtained exclusive jurisdiction over said property; and hence, unless and until the latter tribunal shall relinquish its control over said property, this court is powerless to enjoin, for any period, such foreclosure suit, even though the further prosecution thereof would render futile any steps which otherwise might be undertaken in this court to effect a reorganization of the debtor, and, indeed, would require an abandonment of the instant reorganization proceeding.

It is further contended on behalf of petitioner that the burden devolves upon the debtor and its trustees to establish, first, that this court has acquired possession and control, either actual or constructive, of the mortgaged personal property, and, second, even if that be shown, they must also prove that the debtor has a substantial equity in said property over and above the lien of petitioner and the encumbrances which have priority over the latter. That is to say, even if it should be here shown that, without the maintenance of the status quo for a reasonable length of time, no satisfactory plan of reorganization can be worked out, and that hence the preparation of any such plan—the important details of which could survive the changes in and the consequent disturbance of the debtor's financial structure brought about by such foreclosure suit—would be a practical impossibility, nevertheless, it is contended on behalf of petitioner that the circumstance that said foreclosure suit was one to enforce a lien created more than four months prior to the filing of the reorganization proceeding, and the further fact that it had been instituted in the state court before the instant reorganization proceeding had been commenced, deprive this court of any authority to enjoin the further prosecution of said state court action, even for a reasonable period.

Restated in the language of some of the earlier cases, petitioner's first point is in substance that this court sitting in bankruptcy does not have authority under Chapter X of the Chandler Act, 11 U.S.C.A. § 501 et seq., to enjoin a previously pending foreclosure suit, where the encumbrance sought to be enforced had been given more than four months before the commencement of the reorganization proceeding, even though the further prosecution of the foreclosure suit and a sale thereunder would so hinder and obstruct the preparation and consummation of a plan·of reorganization as probably to prevent it, and although such an injunction is necessary to prevent the defeat or impairment of this court's inherent jurisdiction.

In support of this contention, petitioner's counsel has cited a rather considerable number of decisions. As to these it should first be noted that in none of the cases cited did the court undertake to construe any of the provisions of Chapter X of the Chandler Act. In addition, it should be pointed out that only two of the decisions cited involved corporate reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, these being the cases of State of Texas v. Donoghue, 5 Cir., 88 F.2d 48, and Hoehn v. McIntosh, 6 Cir., 110 F.2d 199. However, as will presently appear, in neither of these two cases was the court called upon to determine the question now being considered.

In the first of these citations it appeared that two suits had been instituted in the state courts of Texas against the debtor

within four months before the filing by the latter of a petition for reorganization under Section 77B. In the first, the attorney general of Texas sought to recover fines, penalties, and forfeitures incurred by numerous alleged violations of certain laws of that state, and therein he also asserted a statutory lien upon all of the debtor's property. In that suit the court appointed receivers, who took charge of the property in controversy, to secure payment of the alleged fines, etc.

In the second state court case, the attorney general sued to recover delinquent taxes, also penalties, etc., alleged to have accrued by reason of the debtor's activities in that state. A statutory lien was also claimed, but the court declined to appoint receivers because the debtor's property was already in the possession of receivers. Four days later the debtor filed a petition under Section 77B. This petition was approved by the court, and at the same time a trustee was appointed, and the debtor filed a plan of reorganization. Thereupon the trustee demanded of and received from the receivers the properties which they had taken. Shortly thereafter, the state court entered in the tax suit an order appointing as receivers of the debtor's property the same persons who had been so appointed in the penalty suit. As stated in the opinion of the Fifth Circuit Court of Appeals [88 F.2d 49]: "The principal order complained of denied a motion of state court receivers for repossession of property of the debtor which had been taken from them by the trustee in bankruptcy. Other orders directly appealed from are with reference to the right of the State of Texas to proceed with suits in its own courts against the debtor to recover taxes, fines, penalties, and forfeitures. One of the orders * * * was adverse to the trustee, and from it he has prosecuted a cross-appeal. It dissolved injunctions, issued on the original reorganization hearing, which restrained the prosecution of tax and penalty suits in the state courts."

It was further stated in said opinion that in the first of the two state court suits the lien relied upon came into existence through the filing of that action, and since the same had been instituted within four months prior to the filing of the petition under Section 77B, the lien thereby acquired became null and void and the property affected thereby became wholly discharged and passed to the trustee of the debtor under the Bankruptcy Act.

With respect to the second state court action the Circuit Court of Appeals pointed out that in the latter suit: "The state court declined to appoint receivers until after the petition for reorganization was approved. When the belated appointment was made, the exclusive jurisdiction of the bankruptcy court had attached, and it was too late for the local tribunal to draw to itself the res which was already in custodia legis."

The cross-appeal taken by the trustee of the debtor was disposed of by the court stating in substance that the question as to whether the injunctions restraining prosecutions in the state courts of the suits against the debtor should be dissolved "was a matter for the determination of the District Judge in his discretion. Having first issued the temporary injunction, he later saw fit to dissolve it, and we cannot say that there was an abuse of discretion in so doing." It will thus be seen that the case of State of Texas v. Donoghue, supra, did not require a determination of the question presented in the instant proceeding.

In Hoehn v. McIntosh, supra, a reorganization proceeding under Section 77B was commenced five days after suit had been filed against the debtor in one of the Ohio courts to terminate a certain land contract. Nothing further was done in the latter suit until about fifteen months later when the vendor under said contract threatened to proceed. Thereupon, and over the objection of the vendor to the effect that the federal court lacked jurisdiction in the matter, the bankruptcy court granted an order authorizing the trustee of the debtor to sell the property for an upset price sufficient to discharge the vendor's lien and also delinquent taxes. The appeal from this order presented the only question requiring determination.

As stated by the Sixth Circuit Court of Appeals (110 F.2d page 201): "Whether the Bankruptcy Court shall exercise power to sell encumbered property * * * free of liens, or sell only the bankrupt's equity of redemption, subject to encumbrances or surrender it to lienholders or others entitled thereto is within the sound discretion of the court and will not be reviewed unless there has been an abuse of discretion."

Following the language just quoted, the court proceeded to point out that the trustee in bankruptcy takes no more than the bankrupt's interest in property claimed by the latter, that ordinarily where it is manifest that property claimed to be owned by the

bankrupt will sell for less than the amount of the lien against it, the bankruptcy court should surrender possession and control of such property to the paramount claimant to foreclose, that the court lacks authority to sell property in the bankrupt's control free and clear of rights of adverse claimants, that the power to sell the bankrupt's property free from liens will not be exercised unless it is made to appear that there is a fair prospect of the property being sold for substantially more than enough to discharge the liens upon it, that the burden is on the trustee to prove such equity, that the court must be satisfied that such sale will be to the interest of general creditors and will not injure lienholders, and that the rule as to exclusive jurisdiction of the bankruptcy court over property of the estate of the bankrupt does not apply to enforcement of liens not invalidated or voided by the Bankruptcy Act where foreclosure proceedings in a state court had been instituted prior to the commencement of bankruptcy proceedings and where the state court had first acquired actual or constructive possession of the property.

The Court of Appeals thereupon concluded its opinion in the following language (110 F.2d page 203): "Conceding, without deciding, that the present suit in the State of Ohio, because of a lack of process, had not reached the stage of a proceeding in rem and that the constructive possession of the res does not vest until service of process, we think it nevertheless necessary, in order to oust the Ohio court of jurisdiction, that the trustee show there was an equity in the mortgaged property for the bankrupt estate, otherwise it has no interest to subserve in ousting the state court of jurisdiction. We think the record in this case fails to show any such equity [citing cases]. If there be any equity for the general creditors in the property, the trustee may obtain it by a proper proceeding without bringing about an unseemly conflict in jurisdiction between the state and federal courts. At the time the bankruptcy court ordered a sale of the property, the plenary suit pending in the Michigan court had not been decided and an attempted sale of the property before its disposition would lead to delay and confusion in the administration and liquidation of the bankrupt's estate. The order of sale was improvidently granted. Reversed and cause remanded for proceedings in conformity with this opinion."

From the foregoing we think it clear that the very title to the property there involved was in controversy, also that the facts in the McIntosh case were not analogous to those presented in the instant proceeding, and that the court there did not undertake to construe any of the provisions of Chapter X of the Chandler Act, 11 U.S.C.A. § 501 et seq.

In determining how the questions raised in the present proceeding must be answered, we think it will prove helpful to point out the important changes made in the Bankruptcy Act with respect to corporate debtors, beginning with the enactment of Section 77B thereof, and next to examine some of the decisions wherein the courts have discussed the intention of Congress in enacting these amendments.

Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which became effective June 7, 1934, provided for both voluntary and involuntary proceedings. Any corporation, with exceptions not pertinent here, could file a petition stating that it was insolvent or presently unable to meet maturing obligations, and that it desired to effect a plan of reorganization. Upon approving such petition the court became authorized to exercise all the powers, unless specially withdrawn, "which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." 77 B, (sub. a.) The same section made provision for the reorganization of a corporate debtor upon the petition of three or more creditors having provable claims aggregating $1,000 or more in excess of the value of securities, such petition alleging that the corporation was insolvent or unable to meet its debts as they mature and, if a prior proceeding in bankruptcy or equity receivership was not pending, that the debtor had committed an act of bankruptcy within four months, and that the petitioning creditors proposed that it should effect a reorganization.

It was further provided in this statute that, "If a receiver or trustee of all or any part of the property of a corporation has been appointed by a Federal, State, or Territorial court, * * * a petition * * * may be filed under this section at any time thereafter by the corporation, or its creditors as provided in subdivision (a) of this section," and upon the approval of such petition by the court, "the trustee or trustees appointed under this section, or the debtor if no trustee is appointed, shall be entitled forthwith to possession" of the

property, displacing thereby the possession of any trustee or receiver previously appointed. 77B, sub. i, 11 U.S.C.A. § 207, sub. i.

The same act also declared that "upon approving the petition or answer or at any time thereafter, the judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * * (10) in addition to the provisions of section 29 of this title for the staying of pending suits against the debtor, may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and *for cause shown*, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree * * *." 77B, sub. c (10). (Italics ours)

It should be here pointed out that the foregoing provisions were in effect and controlling at the time the cases of the State of Texas v. Donoghue, and Hoehn v. McIntosh, supra, were decided. In this connection, it should also be noted, as declared in the case of In re Greyling Realty Corporation, 2 Cir., 74 F.2d 734, 736:

"*The apparent purpose of Section 77B of the Bankruptcy Act* (11 U.S.C.A. § 207), which provides for proceedings in the reorganization of a corporation and its subsidiaries, *is to avoid immediate liquidation of the properties involved, and to rehabilitate rather than liquidate.* * * * Section 77B (c) (10) of the act, 11 U.S.C.A. § 207 (c) (10), grants the power of staying the commencement or continuation of suits against the debtor until after final decree, or the staying of the commencement or continuance of any judicial proceedings to enforce any lien upon the estate until after final decree." (Italics ours)

In the Greyling Realty case, which was a reorganization proceeding under Section 77B, the bankruptcy court had granted an order directing the receivers of the debtor's property in the State of Georgia to turn over said properties to the trustee of the debtor, in spite of the fact that such receivers had acquired possession of said properties a long time prior to the commencement of the bankruptcy proceeding. In affirming said order, the Second Circuit Court of Appeals declared in the course of its opinion (74 F.2d page 737): "The argument advanced here that the right of the court summarily to direct turning over of assets has been lost by reason of the length

of time they [the receivers] have been in possession of the assets is also without merit. Nothing in section 77B indicates any limitation. Its broad language must be held to mean the contrary and to wipe out restrictions. * * * No rule of comity required this trustee in bankruptcy to apply to the state court for an order to turn over the bankrupt's properties in the hands of the officers of that court. The rule suggested in Gross v. Irving Trust Co., supra [289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215], may not be regarded as applicable here because section 77B has granted ample authority. Section 77B eliminates the complicated procedure of applying to the state court for authority to enjoin or stay actions against the debtor and confers authority upon the judge having jurisdiction of the reorganization proceedings. It is intended by section 77B that the order to turn over be issued by the court of reorganization."

To the same effect, see In re 188 West Randolph Street Bldg. Corporation, 7 Cir., 88 F.2d 257, 261; In re Cook, 7 Cir., 101 F.2d 394, 398; In re Portex Oil Co., D.C., 30 F.Supp. 138, 139; In re Island Park Associates, 2 Cir., 77 F.2d 334, 335, 337.

In the case of In re Murel Holding Corporation, 75 F.2d 941, which was also a decision by the Second Circuit Court of Appeals in a proceeding under Section 77B, it appeared that immediately following the institution of a suit to foreclose a mortgage against the principal assets of the debtor corporation, the latter filed a petition under Section 77B and procured an ex parte stay against the foreclosure. Thereafter the mortgagee moved to vacate this stay but the bankruptcy court denied the motion. Prior to the latter ruling, the debtor filed a plan of reorganization, under which the mortgagee was to forego for ten years all amortization payments called for by the mortgage.

While the Court of Appeals reversed the stay order, it is important to note that the sole ground for such reversal was the fact that under the proposed plan of reorganization no adequate protection had been accorded to the objecting mortgagee. In its opinion the court there said in part (75 F. 2d pages 942, 943): "If therefore subdivision (c) (10), 11 U.S.C.A. § 207 (c) (10), may be applied to a situation like this, the stay so authorized, like any other, lies in the court's discretion; prima facie the creditor may go on to collect; if his hand is to be held up, the debtor must make a

clear showing. The liens of the taxes and the first mortgage are now nearly $500,000 and the property is assessed for only $540,-000; it has not been able to pay its way for several years. The amount to be advanced is a mere trifle compared with the debts; its effect is wholly speculative, based upon the expectations of those who have everything to gain and nothing to lose. The mortgagee is to be compelled to forego all amortization payments for ten years and take its chances as to the fate of its lien at the end of that period, though it is now secured by a margin of only ten per cent. It does not seem to us that this setting authorized any stay; it should appear that the plan proposed has better hope of success; full details may not be necessary, but there must be some reasonable assurance that a suitable substitute will be offered. No doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare; much depends upon how long he has had already, and upon how much more he demands. But a stay should never be the automatic result of the petition itself, and we cannot see that there was here anything else of substance."

The decisions in the last two citations were rendered in the early part of 1935. About a year later the Supreme Court decided the case of Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, wherein the highest court restricted in a most important respect the conditions under which corporate reorganization proceedings could be instituted. It was there held, the opinion being by the late Justice Cardozo, that an equity receivership, within the meaning of Section 77B, is a receivership for the purpose of conserving and reorganizing or winding up the business of the corporation, and that a receivership in a foreclosure suit for the purpose of conserving mortgaged property and collecting rents pendente lite for the benefit of the lien holder did not constitute an equity receivership within the meaning of Section 77B, subdivisions (a) and (i) of the Bankruptcy Act. The result of the latter decision was to deprive the bankruptcy court of jurisdiction to effectuate the reorganization of debtor corporations threatened with the loss of their principal assets through mortgage foreclosure proceedings.

It was to overcome the restrictions which some of the decisions had imposed by their construction of certain provisions of Section 77 B, and to enlarge the jurisdiction and the powers of the bankruptcy court with respect to corporate reorganizations, that Congress undertook to reexamine the entire subject matter. Following many hearings and extended debate, numerous changes were adopted, and the entire bankruptcy legislation was codified into what has become known as the Chandler Act, which was approved June 22, 1938. The comprehensive character of this legislation is alone sufficient to indicate that important changes and improvements were intended. Any doubt on this score is removed by a reading of the reports of the hearings thereon before the respective Judiciary Committees of the Senate and the House.

The report of the hearings before the House Judiciary Committee discloses that one of the members of the National Bankruptcy Conference, in the course of his discussion of certain amendments proposed to be made in Section 77 B, stated: "Now, you will recall that under 77B there must be averred in the petition an act of bankruptcy, or as an alternative a prior pending receivership proceeding, and the Supreme Court, as you may remember has held that a foreclosure receivership proceeding was not an equity receivership proceeding as used in the sense as used in 77B. *We have overruled that decision, because it seems to be the consensus of opinion that there is no reason why a debtor corporation in a foreclosure proceeding, should not be permitted to seek and obtain relief in a reorganization proceeding;* * * *" Page 137. (Italics ours)

On the next page of this report we find the following colloquy between Congressman Celler and the witness:

"Mr. Celler. So it becomes really a matter of discretion?

"Mr. Weinstein. I think so, when the proceeding in the other court has not proceeded so far that it is not entirely concluded.

"Mr. Celler. Under subsection 77, the Supreme Court has gone pretty far in some of the railroad cases in precluding creditors from foreclosure on various types of liens, after they have enjoyed the prosecution and possession of those liens. The court has very clearly stated that the mortgagee or holder of liens must be enjoined if the plan of reorganization is imminent.

"Mr. Weinstein. Well, of course, that all integrates with the whole scheme and

objectives of the section, and it depends on how far—

"Mr. Celler. Have you correlated this language with the decisions of the Supreme Court under section 77?

"Mr. Weinstein. No: and I do not think the decisions to which you refer would be immediately applicable to this provision, but those decisions would be applicable to the stay provision.

"Mr. Celler. They would be applicable to the very last provision you read, would they not?

"Mr. Weinstein. They would be applicable more particularly to the stay provision which we are using and I will get to it as I go along. We provide very specifically with reference to stays of proceedings to enforce liens, but if I may be permitted at this point I would like to say that depends entirely upon the point of view you take. If what we are trying to do here is to take an embarrassed debtor owning property and reinstate that debtor for the benefit of the creditors, and when there is an equity also for the benefit of the stockholders, then it seems to me that we should go very far to do that before we destroy the property.

"Mr. Celler. Do you do that under these provisions?

"Mr. Weinstein. I think so. I think we go measurably far."

Again on Page 141 of the same report there is disclosed a further colloquy between the same witness and Congressman Celler and McLaughlin, as follows:

"Mr. Weinstein. * * * We practically make—well, not practically, but we actually make the approval of the petition a self-executing stay. That is following, of course, the practice that has grown up in equity proceedings, which we consider a proper practice.

"Mr. Celler. That is new language; is it not entirely new?

"Mr. Weinstein. Yes, except, in equity proceedings, it is usually contained in the order appointing the receiver. Here we make it a part of the statute.

"And we provide, further, that before the approval of the petition, the court may, upon cause shown, grant a temporary stay of such proceeding until the petition is approved or dismissed; so that if there is any necessity, before the petition is approved, to obtain relief of this nature, the parties in interest may apply to the court, and if they show good cause, the court may grant that temporary stay. Then if the petition is dismissed, or if the petition is approved, rather, the self-executing stay comes into force.

"Mr. Celler. Is the language broad enough to cover all circumstances where there ought to be stays? You are limiting it to pending bankruptcies, mortgage foreclosures, equity receivership proceedings, and * * * a judicial proceeding to enforce a lien. Is that sufficiently all-embracing?

"Mr. Weinstein. I think it is, in connection with the proceeding. * * *"

"Mr. McLaughlin. That still leaves some discretion with the court, because you say, in line 6, 'until otherwise ordered by the court'?

"Mr. Weinstein. Yes. I should have explained that. We believe that, if a stay, which is self-executing, becomes absolutely mandatory throughout a long proceeding, it might affect the interests of the parties unfairly; and, therefore, we permit the court, upon proper showing to relieve against the stay, but the burden, of course, is upon the person who is asking for that relief."

The report of the hearings before the Senate Judiciary Committee, at page 81 thereof, discloses that another member of the National Bankruptcy Conference, in discussing before that Committee certain proposed amendments to the corporate reorganization provisions of the Bankruptcy Act, stated: "We suggest the addition of the following words * * * so that the language will read: 'notwithstanding the pendency of a prior mortgage foreclosure, equity, or other proceeding in a,' and the remainder of the section as it now reads. This additional language is intended to make it clear that *the court will have jurisdiction even though a mortgage foreclosure proceeding is pending. It is designed to meet the decision of Mr. Justice Cardozo construing similar language in Section 77B."* (Italics ours)

Accordingly, among the various changes enacted under the Chandler Act, we find the following provisions which are especially significant in the instant proceeding:

*"Prior to the approval of a petition, the judge may* upon cause shown *grant a temporary stay, until the petition is approved* or dismissed, *of a prior* pending bankruptcy, *mortgage foreclosure* * * * *and of any act or other proceeding to enforce a*

*lien against a debtor's property,* and may upon cause shown *enjoin or stay until the petition is approved* or dismissed the \* \* *continuation of a suit against a debtor."* 11 U.S.C.A. § 513. (Italics ours)

"Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court— \* \* \*

"(4) in addition to the relief provided by section 29 of this title, enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or *any act or proceeding to enforce a lien upon the property of the debtor."* 11 U.S.C.A. § 516. (Italics ours)

"A creditors' \* \* \* petition shall, in addition to the allegations required by Section 530 of this title, state—. \* \* \*; or

"(4) *that a proceeding to foreclose a mortgage or to enforce a lien against all or the greater portion of the property of the corporation is pending;* \* \* \*. 11 U.S. C.A. § 531. (Italics ours)

"*Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act of other proceeding to enforce a lien against the debtor's property."* 11 U.S.C.A. § 548. (Italics ours)

"*A petition may be filed under this chapter notwithstanding the pendency of a prior mortgage foreclosure,* equity, or other proceeding in a court of the United States or of any State in which a receiver or trustee of all or any part of the property of a debtor has been appointed or for whose appointment an application has been made." 11 U.S.C.A. § 656. (Italics ours)

■ Thus it will be seen that, by virtue of the amendments above quoted, the Chandler Act has provided a new and additional alternative ground upon which the bankruptcy court may exercise jurisdiction in a corporate reorganization proceeding instituted upon a creditors' petition, namely, where "a proceeding to foreclose a mortgage or to enforce a lien against all or the greater portion of the property of the corporation is pending."

■ Likewise, this new legislation gives to the judge the further power, upon the approval of a petition, to enjoin or stay ex parte until final decree, the commencement or continuation of a suit against the debtor or any act or proceeding to enforce a lien upon the property of the debtor.

Again, the Chandler Act also provides that the pendency of a prior mortgage foreclosure proceeding in which an application has been made for the appointment of a receiver of any part of the debtor's property —such a mortgage foreclosure suit was pending at the time of the commencement of the present proceeding—shall not constitute any bar to the filing of a reorganization proceeding.

A still further change resulting from this legislation is that upon the approval of the petition seeking a corporate reorganization, a stay is automatically effected of virtually all prior pending proceedings affecting the title to, or possession of, any of the debtor's property.

An instructive and illuminating exposition of many of the important changes in the Bankruptcy Act brought about by this new legislation is to be found in the opinion of the Fourth Circuit Court of Appeals in the recent case of Warder v. Brady, 115 F.2d 89. It was there pointed out:

■ (Page 92) "Another restriction upon jurisdiction that has been recognized by the courts of bankruptcy (as well as courts of equity) is the rule of comity which forbids one court from exercising control over the property of the debtor which is already the subject of proceedings in another court, and permits the court first acquiring possession of the property to continue its administration without interruption until it is complete. \* \* \* If applied to the pending case, it would oust the jurisdiction of the bankruptcy court for the evidence shows clearly that the fund in litigation had been created in accordance with the decree of the state court, and had been placed in the custody of its special receiver long before the institution of the reorganization proceedings in bankruptcy. \* \* \*

(Page 93) "*We are concerned in the pending case, however, with the Act of 1938 which was passed for the very purpose of modifying these restrictions upon the jurisdiction of the bankruptcy court when engaged in a reorganization proceeding under Ch. X of the statute.* \* \* \*

"*Moreover, the rule of comity is relaxed with respect to proceedings under Ch. X. The special exceptions to the rule contained in §§ 60, 67 and 70 of Ch. VII of the Act, 11 U.S.C.A. §§ 96, 107, 110,* are made applicable to proceedings under Ch. X by § 102; and more important for our purposes, §§

*256 and 257, 11 U.S.C.A. §§ 656 and 657, provide that a reorganization petition may be filed under Ch. X notwithstanding the pendency of a prior mortgage foreclosure, equity or other proceeding in a federal or state court in which a trustee or receiver of all or any part of the property of the debtor has been appointed,* and that a trustee appointed under Ch. X, or the debtor, if continued in possession of the property, shall become vested with the rights, if any, of such prior receiver or trustee in such property with the right to immediate possession thereof. *§ 113, 11 U.S.C.A. § 513, empowers the judge, prior to the approval of a petition in reorganization, upon cause shown to grant a temporary stay, until the petition is acted upon, of a prior pending bankruptcy, mortgage foreclosure or equity receivership proceeding, and of any act or other proceeding to enforce a lien against a debtor's property; § 116 (4), 11 U.S.C.A. § 516 (4), empowers the judge, upon the approval of a petition, to enjoin or stay until final decree, the commencement or continuation of a suit against the debtor or its trustee, or any act or proceeding to enforce a lien upon the property of the debtor; and § 2 sub. a (21), 11 U.S.C.A. § 11, sub. a (21), invests the courts of bankruptcy with such jurisdiction at law and equity as will enable them to exercise original jurisdiction in proceedings under Ch. X;* amongst other things, to require receivers or trustees appointed in proceedings not under the act, assignees for the benefit of creditors and agents authorized to take possession of or to liquidate a person's property, although appointed more than four months prior to bankruptcy, to deliver the property in their possession or under their control to the receiver or trustee appointed under the act, and in all such cases, to account to the court for the disposition by them of the property of the bankrupt or debtor. *Obviously these provisions go far to restrict the application of the rule of comity in the particular cases described in the quoted sections, and thus to enlarge the jurisdiction of federal courts over adverse claims.* * * *

■■ (Page 94) "The possession of this jurisdiction by the bankruptcy court in a reorganization proceeding is confirmed by the provisions of Ch. X; § 115, 11 U.S.C.A. § 515, provides that upon the approval of the petition in reorganization proceedings, the court shall have in addition to the jurisdiction, powers and duties of a bankrupt court, all the powers which a court of

the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature; and §§ 187 and 188, 11 U.S.C.A. §§ 587 and 588, permit a trustee or debtor in possession, if authorized by the judge, to exercise such rights and powers as a receiver in equity would have if appointed by a federal court. Heretofore, the dependent jurisdiction of the courts of bankruptcy was restricted by § 23 and by the rule of comity, but now that § 23 is no longer applicable to reorganization proceedings under Ch. X, and *the power to interfere in a prior court proceeding has been conferred upon the bankruptcy court by Congress in the exercise of the bankruptcy power, it seems clear that the bankruptcy court under Ch. X has jurisdiction to entertain all suits to which its trustee or the debtor in possession is a party, even though they be instituted against adverse claimants.* See Finletter, The Law of Bankruptcy Reorganization, 1939 Ed. p. 181. [Kelley v. Gill, 245 U.S. 116, 38 S.Ct. 38, 62 L.Ed. 185 and Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770.] * * *

(Page 95) "These cases related to ordinary bankruptcy procedure, and are not conclusive here. The *bankruptcy court in reorganization proceedings under § 77B, 11 U.S.C.A. § 207, had, and under Ch. X of the 1938 Act now has a wider control, that comprehends not only property of the debtor in his actual or constructive possession, but also property of the debtor in the hands of lien holders. The formulation of a plan of reorganization contemplates a readjustment of secured as well as unsecured debts, and so the summary power of the court extends to all of the debtor's property that can be affected by a plan, whether or not the property is in his possession.* Thus in Continental, etc., Bank & Trust Co. v. [Chicago] Rock Island [& P.] Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, in a proceeding for the reorganization of a railroad under § 77, 11 U.S.C.A. § 205, the court granted an injunction in a summary proceeding against certain banks which held the bonds of the railroad as collateral and enjoined a sale of the collateral during the pendency of the procedure. The propriety of a summary rather than a plenary proceeding was sustained because an adverse claim to the property was not involved."

While it is true that in the foregoing case the order of the bankruptcy court directing a special receiver appointed by a state court

to turn over funds in his hands to the reorganization trustee was reversed, it should be noted that the sole ground for such reversal was the fact that the ownership of the funds in question had been finally adjudicated by a court of competent jurisdiction, and the title thereto had passed from the debtor, before the institution of the reorganization proceeding, and, therefore, such funds did not constitute property of the debtor which under the terms of the Chandler Act should be delivered to the trustee in bankruptcy.

In view of the foregoing, the conclusion appears to be inescapable, not only that one of the underlying purposes in revising the bankruptcy statute through the enactment of the Chandler Act was to maintain the status quo of the debtor corporation pending a reasonable opportunity to reorganize its financial structure with the consent of the statutory percentages of creditors and stockholders, but also that this legislation contemplated that the bankruptcy court would stay adverse action by secured, as well as unsecured, creditors until a reasonable opportunity had been afforded such debtor to submit a plan of reorganization for approval or rejection, and that to such end the law now provides that proceedings for corporate reorganization shall supersede foreclosure proceedings in state or federal courts, also that such proceedings shall divest the title or possessory rights in a prior receiver or trustee, and that restrictions which formerly interfered with the exercise of such broad jurisdiction have been eliminated.

Similar legislation, limiting the right to prosecute mortgage foreclosure proceedings or otherwise to enforce liens, has been upheld with respect to farmer debtors by the Supreme Court. "The farmer's proceeding in bankruptcy for rehabilitation, resembles that of a corporation for reorganization." Wright v. Vinton Branch, 300 U.S. 440, 467, 57 S.Ct. 556, 564, 81 L.Ed. 736, 112 A.L.R. 1455. As declared in the same case, 300 U.S. at page 470, 57 S.Ct. at page 565, 81 L.Ed. 736, 112 A.L.R. 1455: "A court of bankruptcy may affect the interests of lienholders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming part of a bankrupt's estate be marshaled. * * * Despite the peremptory terms of a pledge, it may enjoin sale of the collateral, if it finds that the sale would hinder or delay preparation or con-

summation of a plan of reorganization. Continental [etc.] Co. v. Chicago [etc.] Ry. Co., 294 U.S. 648, 680, 681, 55 S.Ct. 595, 608, 79 L.Ed. 1110. It may enjoin like action by a mortgagee which would defeat the purpose of subsection (s) to effect rehabilitation of the farmer mortgagor."

Again as declared by the Supreme Court in Kalb v. Feurestein, 308 U.S. 433, at pages 438, 439, 60 S.Ct. 343, at page 346, 84 L.Ed. 370: "It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally. Although the Walworth County Court had general jurisdiction over foreclosures under the law of Wisconsin, a peremptory prohibition by Congress in the exercise of its supreme power over bankruptcy that no State court have jurisdiction over a petitioning farmer-debtor or his property, would have rendered the confirmation of sale and its enforcement beyond the County Court's power and nullities subject to collateral attack. The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land. The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law. If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act withdrawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts—State and Federal—must observe."

Accordingly, we conclude that the pendency of the foreclosure suit, filed by petitioner prior to the commencement of the instant reorganization proceeding, does not constitute a bar to the latter proceeding or to its further prosecution, and that the approval by this court of the creditors' petition seeking the reorganization of the

debtor thereby automatically stayed the continuation or further prosecution of such foreclosure suit, pending a reasonable opportunity to reorganize the debtor's financial structure with the consent of the specified percentages of creditors and stockholders.

■ We further conclude that this court, sitting in bankruptcy, has jurisdiction to consider and determine all the issues raised by the debtor in its return to the order to show cause issued upon the petition of Pacific Indemnity Company, including the defense that the debtor has cured the default which constituted the sole ground upon which said petitioner bases its right to commence and prosecute said foreclosure suit.

■ Finally, it should be noted that in deciding the latter question we shall need to take into consideration legislation enacted by the State of California with respect to the subject matter of said defense. As declared by the Supreme Court in Home Bldg. & Loan Association v. Blaisdell, 290 U.S. 398, at pages 435 and 436, 54 S.Ct. 231, at page 239, 78 L.Ed. 413, 88 A.L.R. 1481: "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractural relations are worth while,—a government which retains adequate authority to secure the peace and good order of society. * * * And all contracts are subject to the right of eminent domain. West River Bridge v. Dix, 6 How. 507, 12 L.Ed. 535. The reservation of this necessary authority of the state is deemed to be a part of the contract. In the case last cited, the Court answered the forcible challenge of the state's power by the following statement of the controlling principle, a statement reiterated by this Court speaking through Mr. Justice Brewer, nearly fifty years later, in Long Island Water Supply Co. v. Brooklyn, 166 U.S. 685, 692, 17 S.Ct. 718, 721, 41 L.Ed. 1165: 'But into all contracts, whether made between states and individuals or between individuals only, there enter conditions which arise, not out of the literal terms of the contract itself. They are superinduced by the pre-existing and higher authority of the laws of nature, of nations, or of the community to which the parties belong. They are always presumed, and must be presumed, to be known and recognized by all, are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, wherever a necessity for their execution shall occur.' "