952

to or from a rail head of goods in transit to or from another State."

 Whether the transportation is from a rail head of goods in transit from another State, or from any other terminal where goods are still in commerce, would seem to be without any distinction in so far as the Act is concerned. In other words, applying the Administrator's own interpretation of the Act to truck drivers engaged in moving interstate shipments from railroad freight depots or any other type of terminal or stopping place, if the goods are still in interstate commerce and the destination is Mutual's warehouse, the transportation from such terminal to Mutual's warehouse would be services performed in the movement of goods in interstate commerce, and hence the truck drivers to that extent would be under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq. Furthermore, in so far as it may aid Mutual in its responsibility of segregating the types of employment in which its employees may be engaged, the following interpretation of the Administrator found in the same bulletin, on page 6 thereof, may be referred to:

"It must be pointed out, however, that in any work week in which such driver (except in situations discussed in par. 5(c) of the Bulletin) engages in transportation subject to the jurisdiction which the Interstate Commerce Commission has asserted over such drivers, he will be considered as within the exemption provided by Section 13(b) (1) and thus not subject during the entire week to the maximum hour provisions of the Fair Labor Standards Act."

See, also, Note 11 under this interpretation.

Unloaders and Checkers. Wherever employees of either Mutual or Merchandise Terminal check in merchandise or are required to unload merchandise moving in interstate commerce, whether the same comes in railway cars, trucks or otherwise, such work is within the Act and the employees entitled to the benefit thereof. Likewise, the loaders of cars or trucks carrying merchandise and the checkers of such merchandise to be transported out of the State, are within the Act.

Scope of the Injunction. The evidence does not warrant the issuance of an injunction against Lawrence, Bailey Food, or C. Thomas Stores. Lawrence is engaged solely in field warehousing. It engages in no interstate activities whatsoever. Any employees on its payroll who may perform duties of the other defendants which involve commerce will be covered by the injunction to be issued herein against such defendant or defendants. It will be remembered that all of Lawrence's employees are paid by Mutual. Bailey Food's employees include only executives and administrative officers, and hence are not subject to the Act. C. Thomas Stores is a retail concern. Its business is primarily retail sales, and its office help are not engaged in commerce. Injunction will lie, however, together with the other relief prayed for herein, against Mutual Wholesale Food & Supply Company and Merchandise Terminal Warehouse, Inc. Costs are to be allowed in favor of plaintiff. An exception is reserved to plaintiff and the defendants Mutual and Merchandise Terminal.

Findings of fact and conclusions of law in harmony herewith, and the form of injunctive decree to be entered, may be submitted by the plaintiff upon five days' notice.

**In re ROY.**
No. 4754.

District Court, D. New Hampshire.
Sept. 30, 1942.

J. Morton Rosenblum, of Manchester, N. H., for bankrupt.

Samuel A. Margolis, of Manchester, N. H., for creditors.

MORRIS, District Judge.

This is an involuntary petition in bankruptcy filed against Thomas K. Roy, doing business as Tommy Roy's Diner on June 18, 1942. The petition contains the names of three creditors and the amount of their claims as follows: Silver Bros. Co., Inc., $270.98; Manchester Fruit & Produce Co., Inc., $88; Foster Beef Co., $189.10.

On June 29, 1942, the alleged bankrupt filed a denial of bankruptcy through his attorney, J. Morton Rosenblum. On July 24, 1942, the alleged bankrupt filed a motion to amend the answer and dismiss the action in that the petitioning creditor, the Manchester Fruit & Produce Co., Inc., is precluded and estopped from becoming a petitioning creditor on the creditor's petition in that it did release in writing and waive its claims against the defendant, also, that it is estopped from joining in an involuntary petition against the defendant in that it has, prior to the filing of said petition, exercised an election of inconsistent remedies by releasing and discharging the defendant in writing, waiving its claim against him, and assenting to the assignment for the benefit of creditors in writing, and therefore cannot allege such act, the general assignment, as the basis for an involuntary adjudication.

The matter came on for hearing before the Court, July 2, 1942, but the amended answer was not filed until after the hearing.

I find the following facts: On March 30, 1942, the alleged bankrupt made a common law assignment to his attorney, J. Morton Rosenblum. The assignment was in the usual form and recorded in accordance wth the New Hampshire statute in the City Clerk's office in Manchester on the same day.

It appears that on April 4, 1942, the Manchester Fruit & Produce Co., Inc., one of the signers of the petition in bankruptcy, assented to an assignment in writing, but it is to be noticed that this assent refers to an assignment to Rosenblum dated March 20, 1942. No such assignment appears in the record.

The question for determination is whether or not the Manchester Fruit & Produce Co. is barred because of this assent to an assignment which did not exist, from becoming a petitioning creditor in the bankruptcy proceedings?

Upon an examination of the assent of the Manchester Fruit & Produce Co., and the assent of George Ingle, the only two appearing in the files, I find that the date, "March 20, 1942," was filled in on the typewriter by someone in the assignee's office and sent to creditors for their signature. The assent was inclosed in a letter to the creditors under date of March 31, 1942, in which it was stated that the "debtor on March 30th made a common law assignment for the benefit of creditors to the writer."

The assignee brushed the matter of dates aside as a typographical error but written documents cannot be so easily changed. The fact remains that the Manchester Fruit & Produce Co., Inc., signed an assent to a non-existent assignment which it now repudiates by signing the bankruptcy petition.

It is claimed that the Manchester Fruit & Produce Co., had a legal right to repudiate its assent under the provisions of Section 59, Sub. h of the Bankruptcy Act of 1938, 11 U.S.C.A. § 95, Sub. h, which reads as follows: "A creditor shall not be estopped to act as a petitioning creditor because he participated in any prior matter or judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property, or to allege such prior matter or proceeding as an act of bankruptcy, unless he has consented thereto in writing with knowledge of the facts, if any, which would be a bar to the discharge of the debtor under this Act [title]."

 I construe this Act in accordance with its plain language and hold that the Manchester Fruit & Produce Co., Inc., is not estopped to act as a petitioning creditor in the bankruptcy proceeding. In re Stein-Lazow, Inc., D. C., 30 F.Supp. 409; In re Elfast, D. C., 30 F.Supp. 819.

I find that the alleged bankrupt owes debts to the amount of more than $1,000.

■ The assignment of itself is an act of bankruptcy, and as I have disposed of the only questions raised as grounds for denying bankruptcy, there appears to be no reason why adjudication should not be entered, and the judgment is that Thomas K. Roy, doing business as Tommy Roy's Diner, be, and he hereby is, adjudged a bankrupt and the petition referred to Raymond U. Smith, Referee in Bankruptcy. The motion to dismiss is denied.

## MARTIN v. SOUTHERN PAC. CO.
### No. 22076-S.

District Court, N. D. California, S. D.

Aug. 14, 1942.

Hubert Wyckoff, Jr., and George M. Naus, both of San Francisco, Cal., for plaintiff.

A. B. Dunne and Dunne & Dunne, all of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff sues for damages for personal injuries sustained when a steel door of a freight car fell upon him. He was employed by a contractor performing work for the United States government at a military camp near Ford Ord, California. It was his duty to check lumber and other materials unloaded from freight cars.

Plaintiff alleges that at the time of the injuries defendant owned and operated a railroad system between Los Angeles and Fort Ord; that "on July 22 or 23, 1941, defendant negligently delivered to plaintiff's employer at Fort Ord, for the purpose of unloading, a freight car, loaded with freight, which car was negligently equipped with a defective steel door."

The freight car, belonging to Chicago, Milwaukee, St. Paul and Pacific Railroad Company, arrived at Los Angeles in the possession of Union Pacific Railroad. The Union Pacific loaded the car with celotex and closed and sealed the car with its seals. The car was consigned to the consignee at Fort Ord. Before release the car was inspected by the Union Pacific and placed in the yards of the Southern Pacific Company for interchange to that company.

It was an automobile freight car with double doors, each about six feet wide and ten feet high, and each weighing about 700 pounds. On either side of the door-opening there were posts fastened to the car, and a center post was formed when the doors were closed and fastened top and bottom. The doors moved in a guide at the top and on rollers at the bottom. The doors projected into a space between the guide rail and the car, and the overhang of the guide rail held the doors in place.

On the morning of July 23, 1941, the car was delivered with the seals unbroken to the