## In re CITY MORTGAGE CO.

District Court, D. New Jersey.
Dec. 20, 1938.

T. Raymond Bazley, of Long Branch, N. J., McDermott & Finegold, of Freehold, N. J., and William E. Blackman, of Trenton, N. J., for City Mortgage Co., debtor in possession.

Furst & Furst, of Newark, N. J., for Franklin E. Morales, trustee, appearing specially.

FORMAN, District Judge.

The City Mortgage Company, a New Jersey Corporation, hereinafter referred to as debtor, operated a mortgage business

in the City of Long Branch, New Jersey. It issued and sold to the public bonds designated as "Guaranteed First Mortgage Participation Bonds" under a trust agreement plan entered into with Citizens National Bank of Long Branch whereby the latter agreed to act as trustee for the holders of the bonds issued by the debtor. To secure payment of the principal and interest of these bonds debtor delivered and transferred to the trustee certain bonds and mortgages secured thereby affecting real estate of third parties. Subsequently, the Long Branch Banking Company was accepted as substituted trustee, the former trustee having become incapacitated. In 1933 debtor reached a state of financial difficulty and proposed that the bondholders exchange their bonds for preferred stock. This proposal was effected prior to any federal legislation providing for reorganization. Only about seven per cent. of the bondholders, holding certificates amounting in the aggregate to approximately $37,000, refused.

November 24th, 1936 Sarah E. Robbins filed a bill in the Chancery Court of the State of New Jersey on behalf of herself and the remaining bondholders who had not. consented to the plan of reorganization, and whose bonds were not exchanged for preferred stock. Among other things she prayed for the appointment of a trustee to replace the Long Branch Banking Company to take charge of the assets and property in the trust for the benefit of the non-assenting bondholders. Franklin E. Morales was appointed trustee as a sequel to this bill. In this same proceeding the debtor instituted a proceeding against the substituted trustee contending that he was entitled to hold securities of the face value of only $37,000 which was the principal amount of the outstanding non-assenting bondholders, and that securities above this amount should be returned. This application was referred to Nicholas W. Bindseil, Special Master. He found that the substituted trustee was entitled to administer the trust estate and hold all of the securities of the trust res until the claims of the non-assenting bondholders were paid. The testimony taken before the Master, the exhibits, the Master's report and the briefs were submitted to Vice Chancellor Berry who has the matter under advisement.

On October 31, 1938 the debtor filed a petition under Chapter 10 of the Bankruptcy Act of 1938 (section 101 et seq., 11 U. S.C.A. § 501 et seq.). The petition was approved and the debtor was continued in possession. Two alternative plans of reorganization have been submitted as follows:

"Reorganization Plan No. 1

"The assenting participation certificate holders, now the holders of the preferred stock in the company, amounting to approximately 93% of the participation certificates, and the non-assenting participation certificate holders shall be treated as one class and shall participate equally in all profits of the company by dividend or otherwise. The common creditors of the company shall be paid in full from the assets now in the hands of the Trustee heretofore appointed by the Court of Chancery, when said assets are turned over to the Debtor-in-Possession. Said payments to be made in stated amounts at stated intervals.

"Reorganization Plan No. 2

"The non-assenting participation certificate holders amounting to approximately 7% of the total participation certificates, shall be allowed the privilege of converting the participation certificates into preferred stock of the company. The holders thereof who do not desire to accept the preferred stock of the company shall be paid in cash a sum equal to 20% of the face value of the said certificates; the common creditors to be paid in full under this plan from the assets now in the hands of the Chancery Trustee when the same shall have been turned over to the Debtor-in-Possession in the stated amounts at stated intervals."

Upon the debtor's application an order was made requiring Franklin E. Morales to show cause why he should not turn over all bonds, etc., in his possession as trustee in order that the proposed plans for reorganization might be facilitated.

On the return day of the said order to show cause the trustee, Franklin E. Morales, appeared specially and contended that he was an adverse claimant and that the right to the securities in his possession could not be determined summarily but only in a plenary action. Furthermore, he contended, among other things, that the securities in his possession as trustee were not the property of the debtor, and that this court was without jurisdiction.

The debtor relied upon the following sections of the Bankruptcy Act of 1938 (sections 256, 257):

"A petition may be filed under this chapter notwithstanding the pendency of a prior mortgage foreclosure, equity, or other proceeding in a court of the United States or of any State in which a receiver or trustee of all or any part of the property of a debtor has been appointed or for whose appointment an application has been made". 11 U.S.C.A. § 656.

"The trustee appointed under this chapter, upon his qualification, or if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage." 11 U.S.C.A. § 657.

The contention of the debtor that it is entitled to the possession of the collateral held by Franklin E. Morales, trustee, depends upon whether or not the return of this property will facilitate a plan of reorganization. In Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, there was a reorganization proceeding under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and the bankruptcy court was affirmed in enjoining creditors, who held collateral notes of the debtor, from selling the collateral under power of sale in the notes. But this conclusion was based upon the fact that a sale of this collateral would seriously interfere with a plan of reorganization.

Grand Boulevard Inv. Co. v. Strauss, 8 Cir., 78 F.2d 180, presents a case where the debtor about two years before its petition to reorganize under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, had given a mortgage on its property, and there had been a default, and the trustees designated in the mortgage had taken possession. The trial court had held that it was without power to order that the property held by the trustees under the mortgage should be turned over to the debtor or to a trustee appointed by the court. The appellate court remanded the case stating that it was within the trial court's discretion to grant the relief asked. This court relied upon Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., supra, stating: "In the case at bar, as in the Rock Island Case, it is claimed that the sale of the encumbered property under the mortgage or pledge would seriously interfere with the formation and carrying out of a plan of reorganization. This issue was one addressed to the discretion of the trial court and was so held in the case cited." 78 F.2d 180, 183.

An analysis of the two proposed plans hereinbefore quoted discloses that under the first plan the bondholders who refused to convert their bonds into preferred stock are to be put in the same class as those who did. Common creditors of the company, however, are to be paid in full from the assets now in the hands of Franklin E. Morales.

The second plan provides that the debtor will pay the non-assenting bondholders in cash a sum equivalent to twenty per cent. of the face value of the certificates, and to common creditors one hundred cents on the dollar, the money to be derived therefor from the assets now in the hands of Franklin E. Morales. No interest is allowed to the bondholders.

It is to be remembered that five years ago a large number of these bondholders converted themselves into preferred stockholders voluntarily. It is argued for the debtor that notwithstanding this the preferred stockholders are to all intents and purposes in the same status today as the non-assenting bondholders. This position is not tenable. The bondholders who converted their holdings became the proprietors of the company and controlled it over a substantial period of time and the non-assenting bondholders never receded from their creditor status. In any event this is the very essence of the proceedings in the Court of Chancery which so far has resulted in an adverse decision to the debtor by a Special Master and is now before the court on exceptions to his report.

Under the decisions heretofore cited it is only conceivable that the securities held by the trustee, Morales, possibly could be directed to be transferred to the debtor providing a plan would be facilitated that would be just and equitable to all creditors. The present effort is to take from the class of creditors composed of these non-assenting bondholders their security whereupon the plans of the debtor contemplate that it will be in a position to pay to its common creditors one hundred cents on the dollar and twenty cents to the non-assenting bondholders or else the non-assenting bondholders are to have the priv-

ilege of converting their holdings into preferred stock of which very privilege they failed to avail themselves five years ago. I am not persuaded that the turn over of these securities would facilitate the plans proffered by the debtor so as to make them or either of them just, reasonable and practicable to all creditors. In fact it is apparent upon its face that the non-assenting bondholders would not voluntarily accede to such proposal in sufficient number and amounts as to make the approval of such plans possible. Under such circumstances the order to show cause why the trustee, Morales, should not turn over the securities in his hands to the debtor must be discharged.

It is conceded that unless the debtor is possessed of these securities the plans offered by it cannot be effected. Therefore, I am constrained to the opinion that the approval of the petition heretofore granted should be vacated, because of the following provision of the Bankruptcy Act of 1938 (section 146) providing—

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—

"(1)     *     *     *     *     *
"(2)     *     *     *     *     *

"(3) it is unreasonable to expect that a plan of reorganization can be effected; or

"(4)     *     *     *     *     *."
11 U.S.C.A. § 546.

Since the withdrawal of approval of the petition in this case is tantamount to a termination of the proceedings herein the petition must be dismissed. Cf. Oakland Hotel Co. v. Crocker First National Bank, 9 Cir., 85 F.2d 959.