## In re PORTLAND ELECTRIC POWER CO.

B–23986.

No. 1064.

United States District Court,
D. Oregon.

Sept. 16, 1947.

See also, D.C., 97 F.Supp. 857.

**900**

Clarence D. Phillips, Portland, Or., for debtor.

Ralph H. King, Portland, Or., for independent trustees of debtor.

Frederick M. DeNeffe, Paul E. Kern, Portland, Or., for Bondholders Committee.

W. Stevens Tucker, San Francisco, Cal., for Securities & Exchange Commission.

Charles A. Hart, Portland, Or., Edgar G. Crossman and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co.

Justin N. Reinhardt, Portland, Or., for First Preferred Stockholders.

MacCormac Snow, Harry Beckett, Robert T. Mautz and V. Lyle McCroskey, Portland, Or., for Prior Preference Stockholders.

JAMES ALGER FEE, Chief Judge.

This is a proceeding for reorganization of a corporation under Chapter X of the Acts relating to Bankruptcies, 11 U.S.C. A. § 501 et seq., which has been pending in this Court since 1939. The instant proceeding is founded on a petition that the court order transferred to the Independent Trustees the stock of one of the wholly owned subsidiaries of Portland Electric Power Company, debtor in the proceeding.

The history which is pertinent follows. In 1934 debtor instituted a proceeding under 77B, 11 U.S.C.A. § 207, wherein the amended plan of reorganization confirmed by order of this Court dated March 5, 1935, authorized debtor to enter an indenture of trust with Guaranty Trust Company of New York in order to secure the issue of $16,581,600 of debtor's six per cent collateral trust income bonds. This proceeding was quiescent early in 1939, when it became apparent that these bonds would become in default. Debtor began negotiations to transfer this stock under the terms of the trust indenture to the nominee of Guaranty. Although it was apparently contemplated that the transfer should be made after the petition for reorganization was filed, actually the petition initiated this proceeding after the transfer was made to Kugler and Company, the nominee of Guaranty.

The petition of the debtor alleged Guaranty Trust Company was entitled under the trust indenture to declare the principal of the bonds and all accumulated and unpaid interest thereon to be due and payable immediately and, "unless relief is obtained by the debtor in this proceeding, the said Trustee will declare said default and, upon foreclosure under the terms of said indenture, will, at forced sale under present market conditions, exhaust the assets of the debtor and inequitably wipe out the value of the stock of the debtor which is held by innocent purchasers thereof for value." Other than this, there was no disclosure of the fact that Guaranty had actually received preferential treatment and occupied a favored position in the reorganization.

When this became plain, the Independent Trustees themselves made an attempt to exercise voting rights on the transferred stock, which comprised all of the assets of the debtor, in order that they might nominate the members of the Board of Directors of the subsidiary, Portland General Electric Company. Guaranty thereupon filed a petition asking that the Court restrain the Independent Trustees from such action. The Court referred the matter to a Special Master, and, based upon the hear-

ing of the Special Master, held that the Independent Trustees had no right to exercise the franchise based upon the ownership of this stock. Upon review, this Court refused to confirm the findings of the Special Master. The Court did not at that time solve the immediate question of voting rights nor the underlying question as to whether the Trustees could have the stock transferred to them. These questions were simply reserved and held in abeyance.

Thereafter there were petitions presented to declare that the prior reorganization proceeding was a unity with the present. Upon this basis likewise, it was contended that the stock should be transferred to the Independent Trustees. This question likewise was reserved by the Court. In the meantime, Guaranty had nominated the members of the Board of Directors of the subsidiary, Portland General Electric Company, and the whole Board continued in office by Guaranty's consent.

The Court considered this situation very salutary. The operation of the subsidiary was efficient and eminently satisfactory. Routine affairs were properly handled in a businesslike manner. In serious crises, the Independent Trustees were enabled by court action and otherwise to prevent the subsidiary from undermining the debtor or taking action to harm the best interests of the investors. The result is that now the debtor is prepared to leave the tutelage of the Court under an equitable plan of settlement of its debts.

But at a crisis, the Board of Directors of Portland General Electric Company did not follow the suggestions of the Independent Trustees. They failed and refused to vote a dividend although it was fairly apparent that the resources of the company were such that a dividend was required. The Court assumed that this action indicated a disposition to disregard the best interests of the investors and to use the control of the subsidiary as a weapon to prevent the successful reorganization of the debtor. A hearing was thereupon held upon the question whether the Court has power to order the transfer of the stock to the Independent Trustees.

It is clear, by the matters which transpired immediately before the filing of the reorganization petition, that Guaranty entered the proceeding in a peculiarly favored position by the transfer to its nominee of the entire property of the debtor. By filing its claim, Guaranty submitted itself to the jurisdiction of the Court, and every matter relating to the claim can be here adjudicated. Guaranty is a party to the proceeding. Guaranty is asking relief of this Court. Its position, therefore, is not comparable to a stranger to the proceeding. Its position differs from an adverse claimant who has not submitted to the jurisdiction. The Court could have ordered Guaranty as a condition precedent to consideration of its claim to yield up the preferential rights which were given to it by debtor. This action would have been within the rationale of the Acts relating to Bankruptcies, which are based upon equity.

Since the Court had this power, no estoppel arises against its exercise at the present time. The Court has heretofore refused to compel surrender of the stock and has refused to amalgamate the two proceedings. But the Court has not decided the power to take such action did not exist. The rulings of the Court were made in the interest of orderly proceeding and efficient management of the subsidiaries which were the sole property of debtor. At any time the Court is convinced the possession and use of this property is required to effect reorganization, Guaranty could be compelled to surrender it to the Independent Trustees.

But there is another basis upon which the same result could be obtained. The pertinent provision of the law relating to this situation reads: "The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage." 11 U.S.C.A. § 657.

This particular provision was not in the previous Bankruptcy Act, but was added to Section 77B after considerable experience with corporate reorganizations under the old law. In the chapter on real property arrangements, there is a similar

section wherein it is provided: "The trustee or debtor in possession shall also have the right to immediate possession of all real property and chattels real of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage."[1]

These two provisions occurring in the same act indicate that Congress intended to include personal property as well as real property when it used the words "all property" in the section under consideration.

The history of the Act and the particular section also show that this was done deliberately. It was first proposed to use the same language as appeared in the Section 907 above quoted, but it was amended to substitute "all property" for "all real property and chattels real" of the former section.[2]

There was a special motivation of Congress in thus changing the language of the section as it was first submitted to them. In the operation of the former Section 77B, dicta had crept into the decisions, which indicated that, if the law of certain states made the mortgagee an owner after a breach of condition, the Bankruptcy Court would not have jurisdiction of the property included in the mortgage.[3]

It is true that these dicta do not affect the case at bar nor the situation of the property here involved.[4]

But it is obvious that Congress deliberately intended to make the rule crystal clear that all property, real or personal, in the possession of a trustee for foreclosure of the lien or otherwise, could be taken possession of by the Bankruptcy Court or its agents.[5]

It is to be noted that the debtor is still the owner of this property. There is no contention made to the contrary. This is shown by the direction of Guaranty that Kugler hold in the same fiduciary capacity in which Guaranty would hold. The conclusion is likewise borne out by the statements at the time of transfer and the understanding with the Internal Revenue Department. Whether then the property stands in the name of Guaranty Trust Company, Kugler and Company or in the name of the various directors of Portland General Electric Company, the property is in the debtor. The situation then falls squarely under the language of the statute above quoted.[6]

Of course, the Court would not order the transfer to the Independent Trustees without protecting the right of Guaranty Trust Company and particularly of the holders of the six per cent collateral trust income bonds. This is a familiar device with courts of equity.[7]

1. Chapter 12, Sec. 507 of the Bankruptcy Act as added June 22, 1938, C. 575, Sec. 1, 52 Stat. 927; 11 U.S.C.A. § 907.

2. See hearings before Subcommittee of Senate Judiciary Committee on H.R. 8046, 75th Congress, 2d Session (1938) 81, 82, 83; Finletter, "The Law of Bankruptcy Reorganization" (1939) 149, N. 61; see Heuston, "Corporate Reorganizations under the Chandler Act," 38 Columbia Law Review 1199, 1226 (1938); Gerdes, "Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act" (1938), 52 Harvard Law Review 1, 17, N. 94.

3. Duparquet Huot & Moneuse Company v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591; Tuttle v. Harris, 297 U.S. 225, 56 S.Ct. 416, 80 L.Ed. 654.

4. See Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Company, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110.

5. See John Hancock Mutual Life Insurance Co. v. Casey, 1 Cir., 134 F.2d 162, 163, certiorari denied, 1943, 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709; Finletter, "The Law of Bankruptcy Reorganization" (1939) 121–150; Gerdes, "Corporate Reorganization: Changes Effected by Chapter X of the Bankruptcy Act," supra, p. 17.

6. In re City Mortgage Co., D.C., 25 F. Supp. 784, 787; In re Shelburne, Inc., 3 Cir., 102 F.2d 612; In re Franklin Garden Apartments, Inc., 2 Cir., 124 F. 2d 451, 453, 454; John Hancock Mutual Life Insurance Co. v. Casey, supra.

7. Status of the Pledgee in Corporate Reorganization, 50 Yale Law Journal 470, 477, 478; Continental Illinois National Bank & Trust Company v. Chicago, Rock Island & Pacific Railway Company, supra, 681; In re Brown, 7 Cir., 84 F.2d 433; In re Hasie, D.C., 206 F. 789.

The legal bases are then clearly established. However, the Court is of the opinion that there is a third alternative of a scope much more comprehensive than the two above mentioned. Section 2, sub. a(15), 11 U.S.C.A. § 11, sub. a(15), of the Bankruptcy Act specifically provides that the Court may "Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act * * *." Even if nothing else were involved, the Court, in view of its broad equitable powers, would have the authority to prevent the directors of subsidiary from frustrating the ultimate reorganization. The Court has power to control the subsidiary in the best interest of the debtor. If this could be done by requiring the transfer of the stock, then it should be done. In Grand Boulevard Investment Company v. Strauss, 8 Cir., 78 F. 2d 180, 183, it was stated that the issue involved in these cases is "one addressed to the discretion of the trial court". In the opinion of In re City Mortgage Company, supra, the Court held that the turnover of the security could be ordered if required for the facilitation of the reorganization plan, but the Court refused to exercise the power because they were not persuaded that the turnover would facilitate the plans preferred.

But the situation has entirely changed since the hearing. A dividend was voted by the directors of Portland General Electric Company, thereby evincing their desire to cooperate with the Independent Trustees rather than to oppose them. The plan proposed by the Independent Trustees and approved by the Securities and Exchange Commission and the Court has been carried and will probably go into effect. Two of the directors have resigned. The plan, if finally confirmed, will permit the Court to nominate the Board of Directors, and retain the present members or name new members, as the situation may dictate.

While the Court possesses the power in the exercise of sound judicial discretion, the Court refuses its exercise under the present circumstances.

The rule to show cause is discharged.

See also D.C., 97 F.Supp. 857.