## DUPARQUET HUOT & MONEUSE CO. ET AL. *v.* EVANS ET AL.

No. 533.   Argued January 17, 1936.—Decided February 3, 1936.

*Mr. Harold Harper,* with whom *Mr. Mark M. Horblit* was on the brief, for petitioners.

*Mr. Daniel A. Shirk,* with whom *Mr. Edwin R. Wolff* was on the brief, for respondents.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question is whether a receivership for the collection of rents and profits in a suit for the foreclosure of a mortgage is an "equity receivership" within the meaning of § 77B of the Bankruptcy Act providing for the reorganization of debtor corporations in involuntary proceedings.

In 1934 and afterwards, "2168 Broadway Corporation" was the owner of a large hotel in the City of New York.

and of the fixtures and furniture contained therein. It had no other property. The holder of a mortgage on the hotel began an action of foreclosure and procured the appointment of receivers to collect the rents and profits. Soon after that appointment, three creditors of the corporation, holding claims a little in excess of $1,000, filed a petition in a District Court of the United States for the reorganization of the corporate debtor in accordance with § 77B of the Bankruptcy Act, alleging that the value of the assets was largely in excess of the liabilities, but that the debtor was unable to pay its debts as they matured. The District Court dismissed the petition on the ground that submission to the receivership in the suit for foreclosure was not an act of bankruptcy and did not relieve the creditors from showing in their petition that such an act had been committed. 11 F. Supp. 404. The Circuit Court of Appeals for the Second Circuit affirmed, 78 F. (2d) 678, declining to follow a decision in the Seventh Circuit which upheld a different conclusion. *In re Granada Hotel Corp.*, 78 F. (2d) 409; affirming 9 F. Supp. 909. Because of this conflict and because of the importance of removing doubt as to the meaning of the statute a writ of certiorari was granted by this court.

Section 77B of the Bankruptcy Act, which took effect as law on June 7, 1934 (Act of June 7, 1934, 48 Stat. 911, 912; 11 U. S. C., § 207) provides for two classes of proceedings, voluntary and involuntary. Any corporation, with exceptions not now important, may file a petition stating that it is insolvent or presently unable to meet maturing obligations, and that it desires to effect a plan of reorganization. If the petition is approved, the court assuming jurisdiction shall have and may exercise all the powers, unless specially withdrawn, "which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." § 77B (a). But juris-

diction is not confined to proceedings initiated by the debtor. The statute makes provision by the same section for the reorganization of a corporate debtor at the instance of the creditors. Three or more creditors who have provable claims against a corporation aggregating $1,000 or more in excess of the value of securities may file "a petition stating that such corporation is insolvent or unable to meet its debts as they mature and, if a prior proceeding in bankruptcy or equity receivership is not pending, that it has committed an act of bankruptcy within four months," and that such creditors propose that it shall effect a reorganization. § 77B (a). A later subdivision, § 77B (i); 11 U. S. C., § 207 (i), rounds out the statutory scheme. "If a receiver or trustee of all or any part of the property of a corporation has been appointed by a Federal, State, or Territorial court, . . . a petition . . . may be filed under this section at any time thereafter by the corporation, or its creditors as provided in subdivision (a) of this section," and upon the approval of the petition by a court of appropriate jurisdiction, "the trustee or trustees appointed under this section, or the debtor if no trustee is appointed, shall be entitled forthwith to take possession" of the property, displacing in so doing the possession of the trustee or receiver theretofore appointed.

To fix the meaning of these provisions there is need to keep in view the background of their history. There is need to keep in view also the structure of the statute, and the relation, physical and logical, between its several parts. History and structure will be found to teach together that a receivership in a foreclosure suit is not an equity receivership within the meaning of the law.

The evils and embarrassments that brought § 77B into existence are matters of common knowledge. Corporations not insolvent in the statutory sense (*United States* v. *Oklahoma,* 261 U. S. 253, 260, 261), but presently

unable to discharge maturing obligations, were without a statutory method for winding up their business without a sacrifice of assets. If they had recourse to voluntary bankruptcy, the forms and methods of administration were rigid and often wasteful, leaving little opportunity for coöperative endeavor on the part of all concerned. See Report of Solicitor General Thacher to the President of the United States submitted to the Congress February, 1932; Senate Document 65, 72nd Congress, 1st Session, p. 90. If they held aloof from courts and put their trust in time and effort, there was the danger of disruptive judgments, which would give a preference to a few, with involuntary bankruptcy little, if at all, deferred. The "equity receivership" flourished in this soil. At the suit of friendly creditors, embarrassed corporations joined in the prayer for the appointment of receivers to stave off other creditors more selfish or impatient, and foster whatever value was latent in the assets. There is little doubt that many of these receiverships were legitimate and helpful. None the less there resided in the practice a capacity for abuses, which will be found reflected in the decisions of this and other courts. At times the receivership was used as an instrument of fraud or covin. *Harkin* v. *Brundage,* 276 U. S. 36; *Shapiro* v. *Wilgus,* 287 U. S. 348; cf. *First National Bank* v. *Flershem,* 290 U. S. 504, 517, 518. At times, however fair in its beginnings, it was inordinately prolonged. *Michigan* v. *Michigan Trust Co.,* 286 U. S. 334. At times it had a tendency to intrench delinquency in power, and to stifle inquiry into acts of waste or spoliation. Whatever the importance of these abuses or the defects of the existing remedies, the demand became insistent for a practice more open, more responsible, more efficiently and closely regulated, and withal more surely valid, under the supervision of a court of bankruptcy.

Section 77B, enacted in 1934, was born of that demand. The remedy to be supplanted or more efficiently con-

trolled had no relation to receiverships for the collection of rents and profits in actions of foreclosure. The remedy in view was the one generally known as an "equity receivership," whereby the assets of a corporation were committed to the custody of a court until the time should arrive when they could be returned to the rehabilitated debtor, or if that should be impossible, divided among creditors. The receivership might come into being at the instance of a stockholder (cf. *Bryan* v. *Welch,* 74 F. (2d) 964) or oftener a creditor, but always the end to be served was essentially the same. The end was reorganization or liquidation or something akin thereto. Cf. *Continental Illinois Nat. Bank* v. *Chicago, R. I. & P. Ry. Co.,* 294 U. S. 648, 672; *Gordon* v. *Washington,* 295 U. S. 30, 38. Neither the members of the legal profession nor the legislators were in danger of confusing decrees directed to such an end with the sequestration of rents in an action of foreclosure. Bar associations had their special committees on "equity receiverships," with elaborate reports which were submitted to Congressional Committees.[1] Witnesses, appearing in support of one statute or another, discoursed to Congressional Committees on the failings of "equity receiverships," and on the measures needed for correction.[2] However colloquial and uncertain the words had been in the beginning, they had won for themselves finally an acceptance and a definiteness that made them fit to play a part in the legislative process. They came into the statute through an amendment proposed when the bill which was adopted as § 77 B was passing through

[1]Annual Report of the Special Committee on Equity Receiverships, Association of the Bar of the City of New York, Year Book (1927) 299, 301; *id.* (1930) 407; Hearings before the Judiciary Committee of the House of Representatives, 71st Congress, 2nd Session, April 11, 1930, H. R. 9997, 9998, 9999, 10,000, p. 29.

[2]Hearings, *supra,* at pp. 1–28. Cf. Senate Report 482, Corporate Reorganizations, March 15, 1934, 73rd Congress, 2nd Session.

the Senate. Congressional Record, vol. 78, part 7, 73rd Congress, 2nd Session, p. 7889. They came there freighted with the meaning imparted to them by the mischief to be remedied and by contemporaneous discussion. *Humphrey's Executor* v. *United States,* 295 U. S. 602, 625. In such conditions history is a teacher that is not to be ignored.

. Passing from the setting of the statute to a view of its internal structure, we are brought to the same conclusion, but with added firmness of conviction. A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee, to be applied upon the debt in the event of a deficiency. *Freedman's Saving & Trust Co.* v. *Shepherd,* 127 U. S. 494; *Worthen Co.* v. *Kavanaugh,* 295 U. S. 56, 62; *Sullivan* v. *Rosson,* 223 N. Y. 217; 119 N. E. 405. The corporation retains its other property, if it has any, unaffected in its power of disposition by the decree of sequestration. The creditors retain their remedies except against the income subjected to the lien. There is neither winding up of the business nor attempt to reorganize it and set it going anew. This is not the equity receivership of which the lawmakers were thinking if context and analogy have capacity to deliver up a lesson.

In our scrutiny of the context, we turn to the beginning of the section with its statement of the powers to be exercised after the approval by the court of a voluntary petition. The powers are to be those "which a federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." § 77 B (a). But plainly there is no description here of the powers incidental to the appointment of a receiver in foreclosure. On the contrary, the words describe with aptness an equity receivership to wind up or reorganize We cannot doubt that the same concept persisted through the section. A

few sentences thereafter, in the self-same subdivision, Congress used the words in controversy, speaking compendiously of an "equity receivership" as of something ascertained and known. Surely it was not thinking of a different kind of equity receivership from that explained already, about a score of lines before. The words had been defined. In reason there could be no need to expand or redefine them.

Still scrutinizing the context, we pass to a later subdivision, § 77 B (i), and mark its implications. We learn from this that a petition may be approved if a receiver or trustee of all or any part of the property of a corporation has been appointed by any court in the United States and that thereupon the possession of the receiver shall be displaced and superseded. But plainly this direction, though fairly applicable to an equity receiver in the sense already indicated, was never meant to apply to a receiver in foreclosure. It is common learning that an equity receiver in suits to conserve the assets or divide them among creditors must yield to a trustee in bankruptcy. *Gross* v. *Irving Trust Co.,* 289 U. S. 342. On the other hand, it is also common learning that not even a trustee in bankruptcy may override a valid mortgage lien or supersede a receiver who has been put into possession in fulfilment of the mortgage contract. *Straton* v. *New,* 283 U. S. 318, 322, 327; *Metcalf* v. *Barker,* 187 U. S. 165; *Lincoln Savings Bank* v. *Realty Associates Security Corp.,* 67 F. (2d) 895; *In re Berdick,* 56 F. (2d) 288; *Russell* v. *Edmondson,* 50 F. (2d) 175; *In re Brose,* 254 Fed. 664; *Carling* v. *Seymour Lumber Co.,* 113 Fed. 483, 491. Section 77 B does not make these precedents inapposite. True, the suit for the foreclosure of the mortgage may be stayed or enjoined upon a showing of necessity, § 77 B (c) (10); the lien may be transferred to the proceeds of a sale, § 77 B (b); at times the holder of the lien may have his security modified or reduced by the

plan of reorganization when finally approved, § 77 B (b), (e), (f), (h). Cf. *Continental Illinois Nat. Bank* v. *Chicago, R. I. & P. Ry. Co., supra,* pp. 675, 676, 677; *Louisville Bank* v. *Radford,* 295 U. S. 555, 585. Nowhere does the statute say, however, that those results or any of them shall follow automatically upon the approval of the petitition as properly filed. § 77 B (a). Only by excluding a receiver in foreclosure from the scope of subdivision (i) can we avoid anomalous encroachments upon vested rights and interests.

. Such a reading of the act will help at the same time in the avoidance of other consequences too harsh or incongruous to have been intended by the Congress. The statute speaks, § 77 B (i), of a receiver "of all or any part of the property of a corporation." These words will have a proper office if the receivership is understood to be a general one for liquidation or for cognate purposes. They will take care of a situation where only part of the property is within the jurisdiction, so that not even an "equity receivership" will be competent always, without ancillary orders, to give possession of the whole. But the situation is very different if the receivership in view is one for the foreclosure of a mortgage. In its normal operation such a receivership does not connote possession of all the property of the debtor or even all the property within the appointing jurisdiction. The mortgage may be a lien upon one parcel or a few, leaving other property of abundant value for payment of the debts. Indeed, the cases must be many where the owner of a mortgaged building, not personally liable for the payment of the mortgage debt, will hold it the part of prudence, whether he is solvent or insolvent, to let the building go. True indeed it is that in this case it so happens that the property subject to the mortgage is everything the debtor has. All that is but an accident, which has little, if any, bearing upon the meaning of the act. True it is also that a court

receiving a petition for reorganization *in invitum* may approve or disapprove it, and that any hardship growing out of extreme or unusual situations may thereby be averted. Even so, the search at the moment is for a definition of an equity receivership that will tend to minimize anomalies, and give consistency and coherence to the statutory rule. There is little persuasion in an argument that in despite of all anomalies the system, if it is well administered, may manage to survive.

The suggestion is faintly made that under § 3 of the Bankruptcy Act (11 U. S. C., § 21) the respondent corporation has committed an act of bankruptcy, and hence may be declared a debtor irrespective of the meaning of an "equity receivership" in § 77 B. An act of bankruptcy results *inter alia* if a "person," natural or corporate, has made a general assignment for the benefit of creditors, or if "while insolvent, a receiver or a trustee has been appointed, or put in charge of his property." Bankruptcy Act, § 3 (a) (5), 44 Stat. 662, 663; 11 U. S. C., § 21 (a) (5). There is support for the view that to satisfy this provision the receivership must be general, as contrasted with a receivership incidental to the enforcement of a lien. *Standard Accident Insurance Co.* v. *E. T. Sheftall Co.,* 53 F. (2d) 40, 41. We need not go into that question now. Enough for present purposes that the receiver was not appointed or put in charge "while" the debtor was "insolvent." By the petitioners' admission the value of the assets far exceeds the liabilities. *In re Edward Ellsworth Co.,* 173 Fed. 699; *In re William S. Butler & Co.,* 207 Fed. 705; *Meek* v. *Beezer,* 28 F. (2d) 343; *Standard Accident Insurance Co.* v. *E. T. Sheftall & Co., supra.*

The decree is

*Affirmed.*

Mr. Justice Van Devanter took no part in the consideration or decision of this case.