## In re COSMOPOLITAN HOTEL, Inc.

### HOLMAN et al. v. COSMOPOLITAN HOTEL, Inc., et al.

#### No. 1466.

Circuit Court of Appeals, Tenth Circuit.

Sept. 22, 1936.

Hugo Monnig, Jr., of St. Louis, Mo., J. G. Holland and Montgomery Dorsey, both of Denver, Colo., Taylor, Chasnoff & Willson, of St. Louis, Mo., and Lewis & Bond, of Denver, Colo., for appellants.

Edward L. Wood, of Denver, Colo., and Goggans & Ritchie, of Dallas, Tex., for debtor.

Charles Ginsberg and Charles Rosenbaum, both of Denver, Colo., for appellee General Securities Co.

Walter W. Blood and Bartels, Blood & Bancroft, all of Denver, Colo., for appellee Colorado Nat. Bank of Denver, and for other bondholder appellees except General American Life Ins. Co. and General Securities Co.

Before LEWIS and BRATTON, Circuit Judges.

PER CURIAM.

On January 9, 1935, Cosmopolitan Hotel, Inc., a Colorado corporation, filed its petition under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). The petition represented that the petitioner was the owner of the Cosmopolitan Hotel in Denver, and that the liabilities of the corporation consisted of an issue of bonds secured by a deed of trust in the original amount of $1,750,000 upon which there was a balance of principal due in the sum of $1,480,000 together with unpaid interest. It further represented that a petition to foreclose the deed of trust or mortgage was pending in the state court on which judgment had been entered for the amount of the bonds and an order that the property be sold to pay the judgment. On January 12, 1935, the bankruptcy court entered an order approving the petition of the hotel company.

Prior to its approval the Colorado National Bank of Denver, trustee under the deed of trust securing the bonds, inter-

vened. It set forth powers given to it by the deed of trust, among them the power to institute foreclosure proceedings in the event of default in the payment of the bonds and interest thereon; that there had been a default in the payment of the mortgage debt; that there were no creditors other than the holders of said bonds; that the foreclosure suit was then pending in the state district court in Denver, Colo.; that judgment had been entered in that suit on June 20, 1933, in the total amount of $1,698,214.67; that the hotel company had no assets other than the mortgaged property; and it asked that the petition filed by the hotel company be denied. That judgment was entered against E. A. Colburn only, the mortgagor. A bondholder also intervened prior to January 12, 1935, and objected to the bankruptcy court approving the petition of the hotel company.

On the day the court approved the petition, it appointed a temporary trustee to take over and manage all the hotel company's property, and enjoined all others from proceeding therein. The bank, as trustee, was then in possession operating the hotel in the interest of the bondholders. On January 17, 1935, the bankruptcy court appointed a referee and special master to take further proceedings that might be required under section 77B. Several plans of reorganization were presented to the special master, one or more by the hotel company and others by different groups of bondholders. More than $900,000 in bonds had been deposited with a bondholders committee, and this committee filed a plan of reorganization. None of the proposed plans met with sufficient approval. For more than a year bondholders, stockholders (common and preferred), and the hotel company were in controversies over proposed plans. Many hearings were had before the special master. He made seven reports as to proceedings from time to time before him. He finally reported that reorganization could not be brought about and recommended an order of liquidation by the bankruptcy court. He found that the value of the property of the hotel company was somewhere between $900,000 and $1,250,000. Objections were filed to his recommendation of liquidation. So it came about that on July 6, 1936, the court found that neither debtor nor creditors had submitted a plan of reorganization accompanied by the requisite number of acceptances; that more than a reasonable time had expired for such purpose; that the

debtor corporation could not be reorganized; and that it was to the best interest of all parties in interest that the debtor corporation be forthwith liquidated. It was ordered that it be liquidated, and that the referee liquidate the estate of the debtor in accordance with the Bankruptcy Act (11 U.S.C.A.). Objections and exceptions were saved to the order of liquidation as well as to the report of the special master recommending it by some of the intervenors, including the bondholders committee referred to above.

That committee has now filed with us its petition for appeal from said order of July 6th. In the arguments on the petition for appeal counsel reviewed the facts supposed to have any relation to the entire subject-matter here involved, and it was suggested by the court that if we allowed the appeal we saw no reason why the case should not be reviewed and passed upon by us touching its merits—to which they agreed and have filed with us a stipulation of facts which they consider material.

There is no controversy about the facts. The deed of trust which secured payment of the bonds with interest at the rate of 6½ per cent. per annum was given by E. A. Colburn on December 1, 1924, and placed of public record January 29, 1925. It covered the building then being erected and known as the Cosmopolitan Hotel in the city of Denver and all furnishings and equipment to be used with it. It also covered an adjoining building known as the Broadway Theatre. The Colburn mortgage appears to be a first lien, subject only to accruing taxes which now amount to more than $200,000. By subsequent conveyances the equity in the property mortgaged, if any, passed to Cosmopolitan Hotel, Inc. It did not assume personal liability for the mortgage indebtedness, which Colburn agreed to pay in his execution and issuance of the bonds and deed of trust securing them. In the deed of trust he was designated as party of the first part, the Colorado National Bank of Denver as party of the second part, and all the holders and owners of bonds as parties of the third part. The Cosmopolitan Hotel, Inc., acquired its interest in the mortgaged property early in 1930, and on December 1, 1931, default was made in payment of $80,000 principal of bonds and $48,100 interest thereon. It obtained forbearance and paid all maturing bonds and interest up to and including June 1, 1931, leaving at that time $1,480,000 in bonds outstanding. Default was made

again on December 1, 1932, in the payment of large amounts of interest and bonds that had become due. The trustee bank, acting under the provisions of the deed of trust as it claimed, took possession of all the property and operated it, claiming right to do so under the terms of the deed of trust, and instituted its suit on January 3, 1933, to foreclose the mortgage and sell the property in payment of the indebtedness. Cosmopolitan Hotel, Inc., has never owned and does not now own any property of any kind except that covered by the Colburn mortgage. There are no creditors other than holders of unpaid bonds secured by mortgage. A foreclosure decree was entered in the state court on June 20, 1933. Outstanding bonds at that time amounted to $1,480,000 face value. The mortgage debt was adjudged to be $1,683,214.67. Sale of the mortgaged property was decreed to be made by the sheriff for not less than an upset price. Sale was had on July 21, 1933. The sheriff first offered all the property to the highest and best bidder for cash in hand, as the decree and advertisement provided, and first called for bids from persons other than plaintiff trustee bank for not less than the minimum or upset price of $1,000,000. He received no bids on those terms from anyone. He again offered the property for sale, and the trustee bank bid $1,250,000. It was the only bidder. No money was paid by the bidder except the costs of sale, and a certificate of purchase was issued to it by the sheriff pursuant to the requirements of the Colorado statute. There were objections to the confirmation of the sale by bondholders who took the position that the trustee bank assumed to bid for all bondholders; that it had no right to bid for them; and that they did not desire to become purchasers of the property with other bondholders. These objections were overruled by the court. The Supreme Court of the state on appeal held that these objections were well taken and reversed the order below confirming the sale. See Cosmopolitan Hotel, Inc., v. Colorado National Bank of Denver, 96 Colo. 62, 40 P.(2d) 245, 96 A.L.R. 1446. Thereafter Cosmopolitan Hotel, Inc., went into the bankruptcy court and filed its petition as has been stated heretofore.

Obviously it is the purpose of the bankruptcy court to sell the mortgaged property free of the mortgage lien, transfer the lien to the net purchase price, and distribute it pro rata to the holders of the mortgage bonds. There is no other property and no other creditors. Nothing can be realized for stockholders, and nothing for creditors, if there were other creditors. A majority in amount of the bondholders and the hotel company object. They insist that the hotel company's petition should now be dismissed, reorganization having failed. An assigned judge, who made some of the orders during attempts to reorganize that failed, said: "If reorganization can not be effected this court should not liquidate the property. There is no equity in the property under present conditions." But it is now insisted that a sale in the bankruptcy court free of liens would eliminate the period of redemption given by the state statute, and that this would probably add something to the purchase price. We are not informed that this purpose in anywise adds to or strengthens the power of the bankruptcy court. In Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 584, 55 S.Ct. 854, 860, 79 L.Ed. 1593, 97 A.L.R. 1106, the court said: "By the settled practice, a sale free of liens will not be ordered by the bankruptcy court if it appears that the amount of the encumbrance exceeds the value of the property." A footnote cites many authorities, to which this is added:

"Where the mortgaged property is sold free of liens for less than the amount of the liens, the bankrupt estate and not the lienholders must bear the costs of the sale." See, also, First Nat. Bank v. Bonner (C.C.A.) 74 F.(2d) 139. The case of In re 235 West 46th St. Co. (C.C.A.) 74 F.(2d) 700, is much like this on its facts. There, as here, the first lien on the property left no equity. Ample time had been given to effect a reorganization without success. It was held to be an abuse of power for the bankruptcy court to further stay foreclosure proceedings, and the petition under section 77B was therefore ordered dismissed. The Supreme Court in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, elucidates the statute under consideration. From that opinion it seems clear that the bankruptcy court should not have approved the petition of the hotel company.

We see no reason why the state District Court cannot cure the errors found in the foreclosure decree by the State Supreme Court by providing as an amendment thereto that any bondholder or two or more bondholders acting together should have the right to bid for the property on foreclosure sale, and that in satisfaction of their bid their bonds should be credited

with their pro rata shares of the proceeds distributable to bondholders, and that such bondholders should also deposit with the officer making the sale the necessary amount of cash distributable to such nonbidding bondholders.

Appeal is granted. On the merits the order of liquidation is reversed. The bankruptcy court will vacate it and dismiss the hotel company's petition.