**In re ELFAST.**
**No. 74235.**

District Court, S. D. New York.
Nov. 29, 1939.

820

David W. Kahn, of New York City, for petitioning and intervening creditors.

Clarence C. Meleney, of New York City (John A. Anderson, of New York City, of counsel), for Henry C. Elfast.

MANDELBAUM, District Judge.

The alleged bankrupt and his co-partners, on the application of the Attorney General of the State of New York, were enjoined in the state court from selling securities and a receiver commonly known as a Martin Act receiver was appointed, pursuant to Section 353-a of the General Business Law of the State of New York, Consol. Laws N.Y.C. 20.

A creditor of the alleged bankrupt filed an involuntary petition in bankruptcy against the alleged bankrupt claiming that the appointment of this Martin Act receiver constituted an act of bankruptcy, pursuant to Section 3, sub. a(5), of the Bankruptcy Act, as amended, 11 U.S.C.A. § 21, sub. a(5). The answer of the alleged bankrupt denies that the appointment of such receiver constitutes an act of bankruptcy within the meaning and intent of the Bankruptcy Act.

The issue was referred to a Referee in Bankruptcy, acting as a Special Master, who took testimony and rendered his report recommending the adjudication of the alleged bankrupt as a bankrupt on the ground that the appointment of a Martin Act receiver in the state court while the alleged bankrupt was insolvent or unable to pay his debts as they matured, constituted an act of bankruptcy within the meaning and intent of the Bankruptcy Act. The alleged bankrupt opposes the confirmation of the Special Master's report.

The court finds it unnecessary to set forth the various steps taken both in the state court and in this court since the Special Master has in his detailed report adequately done so. The point to be decided is apparently one of first impression since neither counsel nor the court independently have been able to discover any authority precisely in point. The statute (Section 353-a of the General Business Law of the State of New York) and state court decisions construing this statute have made a receivership under the Martin Act a limited one. Specifically, it authorizes the receiver to take possession of all property fraudulently acquired, as well as all property co-mingled therewith that cannot be identified in kind because of such co-mingling. Burns v. Maguire, 255 App. Div. 552, 8 N.Y.S.2d 313, affirmed 280 N. Y. 700, 21 N.E.2d 203; Goldberg v. Weihman, 243 App.Div. 734, 277 N.Y.S. 657, affirmed 269 N.Y. 537, 199 N.E. 524; Hughes v. Ellenbogen, 256 App.Div. 1103, 11 N.Y.S.2d 561.

The Bankruptcy Act, as amended, Section 3, sub. a(5), provides, among other things, that an act of bankruptcy by a person shall consist of his having, while insolvent or unable to pay his debts as they mature, procured, permitted or suffered voluntarily or involuntarily the appointment of a receiver. The act does not say what kind of receiver shall constitute an act of bankruptcy. However, it has often been decided that the receivership intended by the Bankruptcy Act is a general one, and not one for specifically described property. Standard Accident Ins. Co. v. E. T. Sheftall & Co., 5 Cir., 53 F.2d 40; Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591.

In order to determine whether the appointment of a Martin Act receiver constitutes an act of bankruptcy, the entire proceeding must be examined to determine that question and each case must, of necessity, depend upon its own state of facts. For, to hold without exception or reservation that the mere designation of a Martin Act receiver does not constitute an act of

bankruptcy, would often lead to absurd results. Especially where the facts reveal that the Martin Act receiver not only was empowered by the order of his appointment to do everything that a general receiver could do, but where he actually performed the functions of a general receiver.

In the instant case, the receivership order in the state court empowered the receiver to take possession of all the property derived by means of fraudulent acts in the sale of securities. It also provided that the receiver may collect debts, accounts, assets and property of the defendants and maintain actions to carry out such purposes; that the receiver is vested with the usual powers and duties of receivers according to the laws of this state; and finally, *the receiver was given the authority to liquidate the estate.*

The alleged bankrupt argues that such provisions are incorporated in all Martin Act Receivership orders. While this may be true, it appears from the testimony that the state court receiver actually laid claim to and sought possession of the *only* asset of the bankrupt which has thus far been located. (The proceeds of the sale of the stock exchange seat). It is significant that this asset was in existence *prior* to the commission of any of the fraudulent practices charged by the Attorney General against the alleged bankrupt and his co-partners. It is therefore clear that even if a Martin Act receiver is limited solely to the possession of property derived through fraudulent practices in the sale of securities, at bar, the state receiver has laid a claim to an asset unrelated to the fraudulent practices.

I have heretofore cited the Duparquet case, supra, which dealt with the powers and duties of a receiver appointed in a foreclosure proceeding. I think that our present case is distinguishable from the one cited. There, the issue was whether a receivership in a foreclosure suit, for the purpose of conserving the mortgaged property and collecting the rents pendente lite for the benefit of the lien holder, was an equity receivership within the meaning of Section 77B, subs. a, i, of the Bankruptcy Act, 11 U.S.C.A. § 207, subs. a, i. Judge Cardozo, writing for the Supreme Court, said, 297 U.S. page 221, 56 S.Ct. page 414, 80 L.Ed. 591:

"* * * A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee, to be applied upon the debt in the event of a deficiency [cases cited]. The corporation retains its other property, if it has any, unaffected in its power of disposition by the decree of sequestration. * * * There is neither winding up of the business nor attempt to reorganize it and set it going anew. * * "

Compare the powers of the foreclosure receiver with those contained in the Martin Act Receivership order and it becomes obvious that they are entirely different. The former is highly limited, whereas the latter is broad and general. A further quotation from the Duparquet case, strengthens this view, 297 U.S. page 223, 56 S.Ct. page 415, 80 L.Ed. 591:

"But the situation is very different if the receivership in view is one for the foreclosure of a mortgage. *In its normal operation such a receivership does not connote possession of all the property of the debtor or even all the property within the appointing jurisdiction*". (emphasis by the court)

From this point, we pass to the issue of the alleged bankrupt's insolvency. I am of the opinion that the same was sufficiently established before the Special Master. First, the alleged bankrupt consented to the appointment of the receiver in the state court. Second, he failed to appear for examination before the Special Master with his books and records, and accordingly the burden of proving solvency shifted to him. From the evidence, the alleged bankrupt failed to sustain the burden of proof. See Section 3, sub. d of the Bankruptcy Act, as amended, 11 U.S.C.A. § 21, sub. d. I further believe that the claim that he was not given an opportunity to appear is without merit. He was given sufficient opportunity to appear personally and even though he was incarcerated in a state prison, no attempt was made on his behalf, either by application to this court or otherwise for any relief with respect to arranging for the alleged bankrupt's appearance before the Special Master. That such arrangements could have been made I think is beyond dispute.

One other point need be considered. The alleged bankrupt claims that the participation of Lamb, one of the petitioning creditors herein in the state court proceeding, estopped her from acting as a

petitioning creditor in this bankruptcy proceeding. This contention is based on the law as it existed prior to the amendment of the Bankruptcy Act by the Chandler Act, which went into effect on September 22nd, 1938, 11 U.S.C.A. § 1 et seq. Under the prior existing law, such claim would have to have been upheld. In re Goldman-Rosenzweig, 2 Cir., 65 F.2d 390.

Under the present law, Section 59, sub. h, of the Bankruptcy Act, 11 U.S.C.A. § 95, sub. h, a petitioning creditor can only be estopped if it is affirmatively shown that such creditor consented in writing to such proceeding after full knowledge of all the facts which would be a bar to the debtor's discharge. Here, there was no proof that Lamb intervened in the state court proceeding with any knowledge on her part concerning acts of the bankrupt which would bar his discharge. Such claim rests on supposition or conjecture. The mere intervention in the state court proceeding without any affirmative proof of such knowledge is insufficient to create an estoppel under Section 59, sub. h, of the Bankruptcy Act, as amended.

I hold therefore that from the evidence and exhibits in this case, the appointment of the Martin Act receiver, while the alleged bankrupt was insolvent or unable to pay his debts as they mature, constitutes an act of bankruptcy. The Special Master was correct in his conclusion that an order should be made adjudicating the alleged bankrupt as a bankrupt and his report is confirmed.