**NATIONAL LABOR RELATIONS BOARD**
v.
**MASTRO PLASTICS CORP. et al.**
No. 190, Docket 22905.

United States Court of Appeals. Second Circuit.

Argued April 8, 1954.
Decided July 16, 1954.

George J. Bott, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Bernard Dunau, Harvey B. Diamond, Washington, D. C., for National Labor Relations Board, petitioner.

Brenner, Butler & McVeigh, New York City, Butler, Bennett & Fitzpatrick, New York City (Bernard H. Fitzpatrick, New York City, of counsel), for respondents.

Before CHASE, Chief Judge, and SWAN and FRANK, Circuit Judges.

CHASE, Chief Judge.

Local 3127, United Brotherhood of Carpenters and Joiners of America, the bargaining agent for respondents' employees, filed charges against Mastro Plastics Corp., and French-American Reeds Manufacturing Company, Inc., two New York corporations which, though separate corporate entities with separate payrolls, are under the same management, have the same employees and use the same plant. The charges, as amended, were that the respondents had engaged in unfair labor practices in viola-tion of Section 8(a)(1), (2) and (3) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq. The substance of them was that the respondents by various unlawful means aided Local 318, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, in attempting to become bargaining agent for the respondents' employees during a time when they were represented by Local 3127; that an employee, one Frank Ciccone, was discriminatorily discharged because of his membership in, and activities on behalf of, Local 3127, and because of his refusal to join Local 318; that 76 other employees were unlawfully locked out or discharged for the same reasons; and that applications for reinstatement by these employees were rejected. The relief sought was a cease and desist order and reinstatement of the discharged employees with back pay.

Respondents' answer admitted the discharge of Ciccone and the other 76 employees, but denied allegations of unfair labor practices. For affirmative defenses, it was alleged that Ciccone was discharged for violating the instructions of his superiors and that the employment of the remaining 76 employees was lawfully terminated because they went on strike in violation of a collective bargaining contract and of Section 8(d) of the Act.

Hearings were held before a trial examiner in New York in March, 1952; findings sustaining the charges were made except as to the alleged lockout; and it was recommended that the affirmative defenses, which were established in point of fact, be held legally insufficient. On review the Board adopted the findings, conclusions and recommendations of the examiner, with one exception not relevant here, and the respondents were ordered, two members of the Board dissenting, to cease and desist from their unfair labor practices and to reinstate with back pay Frank Ciccone and the other 76 employees named. The unfair labor practices are no longer contested and the only part of the Board's order which is in contention is that requiring

reinstatement of employees with back pay.

The facts are set forth in 100 N.L.R.B. No. 51, and only a brief résumé of them is now needed. Since 1948, when Local 3127[1] was certified by the New York State Labor Relations Board, it has been the bargaining agent for the respondents' employees. In August of 1950, Local 65 of the Wholesale and Warehouse Workers Union, which was regarded by the respondents as being communist dominated, started organizational activities among the employees. To combat Local 65 the respondents sought to replace Local 3127 with Local 318, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, the latter being a much stronger union, and from the middle of September until November 20, 1950, the respondents committed rather flagrant unfair labor practices to achieve that end. Local 318 was encouraged, sponsored, and actively assisted by the respondents in signing up the employees; some employees were rewarded for aiding Local 318; and the respondents' officers and supervisors made promises of benefit and threats of reprisal related to membership in the rival unions These activities culminated, on November 10, 1950, in the discharge of employee Frank Ciccone because of his activities on behalf of Local 3127 and his opposition to Local 318. His discharge precipitated a strike which, by the following day, involved all of the respondents' employees, and which lasted until March 9, 1951, when application for reinstatement of striking employees was made and denied as to Ciccone and the seventy-six who have been ordered reinstated with back pay.

About three months prior to the applications for reinstatement, on December 11, 1950, some of the respondents' employees returned to work and a form letter was sent to all employees remaining on strike notifying them that their employment had been terminated by reason of their striking in violation of the collective bargaining contract. The contract provision upon which the respondents relied reads as follows:

"5. The Union agrees that during the term of this agreement, there shall be no interference of any kind with the operations of the Employers, or any interruptions or slackening of work by any of its members. The Union further agrees to refrain from engaging in any strike or work stoppage during the term of this agreement."

As "the term of this agreement" did not expire until November 30, 1950, the strike did occur during the term and so it is contended that the strikers, by breaking the contract, lost the right to reinstatement.

However, since the strike was caused and prolonged by the respondents' unfair labor practices, we agree with the Board that it is not prohibited by the strike-waiver clause in the contract. That clause must be interpreted in the light of the entire contract of which it is an integral part, not as an isolated waiver unrelated to the rest of the agreement, and the inhibition it imposes is operative only as regards strikes growing out of disputes concerning those matters covered by the contract provisions or arising out of the normal relations of the parties. Instances of strikes to enforce changes in contract provisions which violate a no-strike clause, of which Scullin-Steel Company, 65 N.L.R.B. 1294, and Joseph Dyson & Sons, Inc., 72 N.L.R.B. 445, are examples, should be distinguished. The right of employees to strike in resistance to unfair labor practices by the employer is a fundamental one which the statute recognizes and no contractual waiver of that right is to be inferred from general provisions

---

[1]. Also involved in dispute with the respondents was Federal Labor Union, Local 22045. But, as Local 22045 and Local 3127 were represented by the same persons, used common offices, and as the representation rights of respondents' employees were at various times shifted by them between the two unions, we shall refer to them jointly as Local 3127.

in a collective bargaining contract which do not make it clear that strikes caused by the employer's unfair labor practices were included in the prohibition. See National Electric Products Corporation, 80 N.L.R.B. 995. Unfair labor practices in violation of the Act were in no way covered by the contract, nor did the contract provide means for combating them or settling disputes arising because of them. And, of course, the respondents' unlawful activities cannot be considered part of the normal relations of the parties.

The respondents also argue that, even if the no-strike clause was not a waiver of the right to strike as to matters outside the contract, it was violated because the strike was caused by the discharge of Ciccone, which was an arbitrable matter under the contract, and that the strike was continued for the sole purpose of securing Ciccone's reinstatement. Were this assertion accurate as to the cause of the strike and its continuation we would agree. However, the Board found that the strike was caused and prolonged solely by the respondents' violations of the Act. Ciccone's discharge was regarded by the Board, and by the trial examiner, as the spark which set off the strike, not as the essential cause of it, and the evidence amply supports this conclusion.

The main contention by the respondents is that their affirmative defense based on Section 8(d) of the Act, 29 U.S. C.A. § 158(d), should have been sustained. On October 10, 1950, Local 3127 notified the respondents in the required manner of their desire to negotiate for the modification of the existing collective bargaining contract. This brought into operation Section 8(d), which provides that contracts may not be modified except under certain circumstances: the party seeking modification must serve notice on the other party sixty days prior to the time of the proposed modification, there must be an offer to meet and confer for purposes of negotiation, mediation agencies must be notified, and the existing contract must be continued in full force and effect during the sixty day period following notification, without resort to strike or lock-out. It is further provided in subdivision (d)(4) that "Any employee who engages in a strike within the sixty-day period * * shall lose his status as an employee * * * for the purposes of sections 8–10 of this Act * * *."

If the word "strike" in the just mentioned subdivision is to be read as meaning "any strike" however caused and regardless of its objectives, all of the strikers ceased to be employees when they went on strike and none were entitled to reinstatement.

■ The Board has found by adopting the trial examiner's findings which were based upon ample evidence that the strike was caused solely by the unfair labor practices of the respondents and was not motivated by any purpose so to obtain any economic advantage by way of contract modification. And so the question is squarely presented as to whether the statutory deprivation of employee status applies to strikers whose sole purpose is to protest against unlawful conduct on the part of the employer and to remedy unfair labor practices which constitute such conduct.

■ In order to arrive at the true meaning of the word "strike" as used in this subsection, its relation to the purpose of the subsection as a whole must be given due consideration. Though some statutes may be so simple in language and purpose that when all the words are read literally and inclusively the exact meaning clearly appears, often that is not so and it isn't in this instance. As usually must be done in interpreting a statute, all of its provisions should be read in the light of the legislative purpose and with reference to each other. United States v. Boisdore's Heirs, 8 How. 113, 12 L.Ed. 1009; Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591.

■ Section 8(d)(4) of the Act deals with the obligation to bargain collectively in good faith and particularly with the termination or modification of exist-

ing bargaining contracts. After making provision for procedures looking toward the attainment of such ends, which contain conditions applicable both to employer and employees, a sanction is imposed upon employees as a coercive measure to prevent their use of the strike either to, obtain or to prevent the termination or modification of a collective bargaining contract. The "sixty-day period" is a special period during which the status quo ante is to be maintained in respect to employer-employee relationships while the statutory method for bargaining as to existing contracts set up in the subdivision is being used; and a "strike" within the sixty-day period" means a strike in interference with the use of that method. In other words, it is tied to the method by the modifying words "within the sixty-day period" and that tie limits the sanction Congress imposed upon the employees involved in the use of the statutory method and excludes strikes which are still protected activities because they are unconnected with the use of the method. Were this not so, we would have to attribute to Congress the intent not merely to provide for an orderly way to terminate or modify existing collective bargaining agreements but the intent both to give an employer, by taking advantage of the method, an opportunity to indulge in unfair labor practices which employees would, perhaps, find it too hazardous to resist quickly and effectively by means of a strike, and to require employees, who used the method, to do so on pain of giving the employer just such an opportunity. It would discriminate, in respect to the right to resist unfair labor practices by striking, between employees working under a collective bargaining contract and those who were not and between unions who were satisfied with such existing contracts and those who were not. And it would penalize the latter for attempting lawfully to remedy their condition by peaceful bargaining. In view of the well known purpose of the Act to prevent industrial strife, such an intent should not be attributed to Congress until, and unless, it sees fit to say so in clear and uncertain terms.

It has been said that the provision in Section 13 that, "Nothing in this Act, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right" requires a conclusion opposite to that reached. That, of course, is not so unless we are wrong in holding that there is no limitation upon the right to participate in an unfair labor practice strike. In so far as here relevant, it presupposes a limitation and has no significance as to whether there is one. In Local No. 3 etc. v. National Labor Relations Board, 8 Cir., 210 F.2d 325, it was held that the employer had not been guilty of an unfair labor practice in the discharge of employees. It was, accordingly, not an unfair labor practice strike. Perhaps that serves to distinguish that case from this but, if not, we find ourselves in respectful disagreement.

A motion by the respondents to reopen the proceedings for the introduction of additional evidence as to the meaning of the no strike clause in the contract was made before the Board and denied. A motion has been made here to remand to the Board for that purpose pursuant to Section 10(e) of the Act. Apparently the movants had an opportunity to adduce such evidence at the hearings and failed to avail themselves of it. At least we are not satisfied by the showing here made that there are reasonable grounds for their failure to present such evidence at those hearings and the motion is denied.

Order enforced.

SWAN, Circuit Judge (dissenting in part).

For the reasons well stated in the opinion of the dissenting members of the Board, I would deny enforcement of the reinstatement provisions of the order.