296 F.2d 678
 In the Matter of NAZARETH FAIRGROUNDS & FARMERS' MARKET,
INC., Debtor, Arnold A. Weinstein and Jerome
Fried, Appellants,
v.
Irving J. WOLF, Robert H. Davidson, Richard S. Hull,
Frederick Katzenell, andNazareth Fairgrounds &
Farmers' Market, Inc., Appellees.
 No. 403, Docket 26362.
 United States Court of Appeals Second Circuit.
 Argued Aug. 17, 1961.
Decided Nov. 9, 1961.
 
 Harold Harper, New York City (Harper & Matthews, New York City) (Harold Harper and Vincent P. Uihlein, New York City, on brief), for appellant Jerome Fried.
 Arnold A. Weinstein, New York City, appellant, pro se.
 Alex L. Rosen, New York City, for debtor.
 Melvin L. Robbins, New York City, for appellees Wolf, Davidson, Hull and Katzenell.
 Before MOORE, FRIENDLY and SMITH, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 The skeins from which Nazareth Fairgrounds & Farmers' Market, Inc. (hereafter Nazareth) began, and the lengthy efforts to unravel them, are recounted in my brother Moore's opinion in Nos. 27000 and 26962, 2 Cir., 296 F.2d 670. The instant appeals relate to a chapter in the Nazareth epic which, if scarcely modern, is at least more recent. The principal issue is the applicability to an officer and to a general manager of a debtor in possession, who have been receiving compensation pursuant to 191 of the Bankruptcy Act, 11 U.S.C.A. 591, of Section 249, 11 U.S.C.A. 649, which provides:
 
 
 2
 'Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent qpproval of the judge, been otherwise acquired or transferred.'
 
 
 3
 We hold the section inapplicable.
 
 
 4
 Nazareth filed its petition for reorganization under Chapter X in September, 1953. Weinstein was then its president and Fried its general manager.[1] The petition prayed that the 'petitioner by Arnold A. Weinstein and Jerome Fried by authorized, directed and empowered to operate the business and manage the property of your petitioner.' The Court left the debtor in possession and authorized it to pay $100 a week to Fried, then described as secretary-treasurer, and nothing to Weinstein. m Later the salary of Fried, then described as general manager, was increased, first to $150 and then to $200 a week, and Weinstein was awarded compensation of $50 a week. Fried, who is located at Nazareth, Pa., has been in active charge of the day-to-day operations of the debtor; Weinstein, a New York attorney, has made regular inspection trips and has passed on leases and other general policy matters. The administration has been successful, gross business having tripled from 1953 to 1959 and profits having arisen from zero to $41,269.
 
 
 5
 In the course of administration a bitter contest for control arose between the stockholders who had elected Weinstein and Fried and an opposition group with which appellees are identified, known as the Rehrig group, Rehrig being a tenant of the Debtor. In August, 1958, an election of directors was held, at which Weinstein, Herbert Danciger (not in either group), and Philip (Rehrig's attorney) were elected; they thereupon chose Weinstein as President, one Laupheimer as Vice President, Danciger as Secretary, and Philip as Treasurer. All this was subject to the Court's approval, as required by 191; among the welter of petitions in this proceeding was one, verified August 6, 1958, but not decided until June 14, 1960, asking for that.
 
 
 6
 In March, 1959, appellees submitted a 'Petition for Termination and Recoupment of Compensation (Pursuant to 249 of the Bankruptcy Act).' The petition alleged that Weinstein's sister had purchased six shares of the debtor's stock in 1957; that in 1958 and 1959 Weinstein had purchased three shares, and sold a fraction of one; that in 1959 he or persons represented by him had exercised options to purchase six shares; that Fried had bought twenty shares in 1957 of which he had sold ten back to the vendor in 1958; and that these transactions violated 249 and required the termination of appellants' compensation and the return of salary and expense moneys previously received. Weinstein filed an answering affidavit disclaiming responsibility for his sister's purchase and taking the position that his own purchases were made from stockholders who had tired of the long delays and insisted on selling to someone despite Weinstein's advice that they keep their stock-- also that as to most of the stock, he was buying pursuant to options which had been arranged, in order to prevent a 'raid' by Rehrig, on a basis that might result in others participating in the purchase nominally being made by him. He alleged also 'that until now I was not aware of section 249 of the Bankruptcy Act,' although conceding that he was 'chargeable with knowledge of its provisions.' This was followed, a month later, by an order requiring appellees to show cause why their petition should not be dismissed pursuant to F.R.Civ.Proc. rule 12(b), 28 U.S.C.A., with leave to appellants to answer in the event of denial.
 
 
 7
 The Court sent the matter to a referee for hearing and report; Referee Joyce recommended that the motion to dismiss be granted. When his report came before the District Judge in January, 1960, the judge filed a memorandum disapproving the Referee's ruling and setting a hearing for proof bearing on 'recoupment' of past compensation and expense oneys. Such a hearing was held on June 14; at its conclusion, the judge directed from the bench that Fried be discharged as general manager, that Weinstein have nothing further to do with the operation of debtor's business, that the prayer for 'recoupment' be denied, that the election of directors and officers be approved, that no funds should be disbursed save on Philip's countersignature, and that Philip should supervise the debtor's affairs pending the early appointment of a new general manager. Weinstein and Fried appealed from all of the order save for the denial of 'recoupment' and so much of the approval of the election as did not relate to Philip; appellees cross-appealed from the former. On motion of Weinstein and Fried, offering to serve without compensation unless the order should be reversed, this Court, on July 12, 1960, stayed so much of the order as removed them from participation in the debtor's affairs and designated Philip in their stated, with leave to the District Judge to file more detailed findings of fact and conclusions of law. These make plain that 'Weinstein's and Fried's dissociation from the management' of the debtor was directed 'solely because they, as fiduciaries, violated section 249 of the Bankruptcy Act by dealing in the debtor's stock.'[2] When granting the stay, we had supposed the appeals would be heard in the fall of 1960; however, they were not argued until a special sitting on August 17, 1961. On Weinstein's and Fried's appeal we reverse, save as to the approval of the election of directors and officers; this reversal leads to affirmance on the cross-appeal.
 
 
 8
 We assume that, under the wide powers conferred by 188 of the Bankruptcy Act, 11 U.S.C.A. 588, the District Court might permissibly conclude that an officer or employee of a debtor who had disentitled himself to receive compensation should no longer be allowed to serve even if his service was otherwise in the best interests of the estate. The question thus is whether appellants had done that.
 
 
 9
 Section 249 finds its source in two district court decisions, In re Paramount-Publix Corp., 12 F.Supp. 823 (S.D.N.Y.1935), and In re Republic Gas Corp., 35 F.Supp. 300 (S.D.N.Y.1936), denying compensation to members of committees who had traded in securities of a debtor in reorganization under 77B of the Bankruptcy Act, 48 Stat. 912 (1934), the predecessor of Chapter X, see also In re Mountain States Power Co., 118 F.2d 405, 407 (3 Cir. 1941). Referring to these cases, the draftsmen of the Chandler Act explained that 249 was 'a development of the idea that fiduciaries who trade in the securities should be penalized; that is, where they act contrary to the spirit, at least, of the common law and, in certain types of transactions, contrary to the letter of the common law' and constituted 'a setp toward the codification' of the rule laid down in the district court decisions, 'an attempt to make it more uniform,' and 'broaden the base a little bit.'[3] Decision whether the base was broadened so as to include make it more uniform,' and 'broaden a debtor in possession demands some examination of the latter concept and of the structure of the statute. Here, as in Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 218, 56 S.Ct. 412, 413, 80 L.Ed. 591 (1936), 'there is need to keep in view also the structure of the statute, and the relation, physical and logical, between its several parts.'
 
 
 10
 The concept of leaving a debtor in possession, 'A receivership without a receiver,'[4] was one of the many innovations introduced by 77B to meet the insolvency problems of the great depression. The thought was that expense could be saved and perhaps efficiency gained by avoiding the universal appointment of trustees and continuing, in appropriate cases, the possession of corporate managements whose calamities, in many instances, had been due to national or even international economic forces quite beyond their control. After much debate, this practice was carried into Chapter X, in considerably reduced scope. The provisions dealing with it are found in Article VII-- Proceedings Subsequent to Approval of Petition, 156, 159, 162, 1638 168, and 170, and in Article VIII-- Title, Rights, and Powers of Trustees and Debtors in Possession, especially 1888 189, 190 and 191, 11 U.S.C.A. 588, 589, 590, 591. The first sentence of 191 provides 'A trustee or debtor in possession may employ officers of the debtor at rates of compensation to be approved by the court.' The orders with respect to Weinstein's employment were made pursuant to that section, and the orders with respect to Fried were evidently intended to be.
 
 
 11
 On the other hand, 249 is contained in Article XIII, entitled 'Compensation and Allowances.' The initial sections, 241-246, 11 U.S.C.A. 641-646, describe the persons to whom reimbursement for costs and expenses and compensation for services rendered may be made. These include the referee, special masters, 'the trustee and other officers' and their attorneys, the attorney for the debtor, the attorney for the petitioning creditors, indenture trustees, depositaries, reorganization managers, committees or representatives of creditors or stockholders, and certain other categories. Section 247 provides that 'The judge shall fix a time of hearing for the consideration of applications for allowances,' notice of which shall bew given to a wide variety of parties in interest. After an intervening section not here relevant, comes 249, quoted above.
 
 
 12
 If the words in the final sentence of 249 'or other person acting in the proceedings in a representative or fiduciary capacity' were to be read in isolation and out of context, appellees would doubtless be right that Weinstein and Fried fell within them. However, as said in United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 542, 60 S.Ct. 1059. 1063, 84 L.Ed. 1345, (1940), 'To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute.' The last sentence of 249 must be read not only with the preceding one but with the other sections of Article XIII. When the sentence is so read, it becomes fairly plain that the words 'or other person acting in the proceedings in a representative or fiduciary capacity' relate only to persons so acting who fall within the categories allowed compensation under 241, 242 or 243.
 
 
 13
 Officers of a debtor in possession are not among these. They are not 'other officers' within 241(3), at least if that term has the meaning specified in 1 (22), and we see no reason why it should not, since the defined meaning is not 'inconsistent with the context.' Nowhere do 241, 242 and 243 refer to officers or employees of the debtor, an omission doubly significant in view of the specific mention of the attorney for the debtor in 241(4). The reason for the omission is plain enough. Such persons were not required to 'seek compensation' through the necessarily cumbersome procedure of 247, since compensation of officers of the debtor would have been approved under 191 and employees would have been paid, under 189, as if the debtor had remained solvent. Not being required to seek compensation under 247, they have not been subjected to 249, and the order of removal cannot survive the fall of its underpinning.[5]
 
 
 14
 Such a construction accords with the sense of the statute. The persons to whom Article XIII authorizes the allowance of compensation for services from the estate of the debtor are persons who would not have been rendering such services if the reorganization proceeding had not occurred. For these strangers the only road to compensation from the debtor's assets is interposition by the court-- in sharp contrast to officers and employees of the debtor whose claim to compensation derives from consensual arrangements, subject only, in the case of officers, to judicial approval under 191. It would be altogether natural for Congress to prescribe that persons of the former sort, when acting in a representative or fiduciary capacity, should abstain from dealing in claims against or stock of the debtor on pain of forfeiting any right to compensation, without imposing a similar Draconian penalty upon the latter, who were being compensated during the Chapter X proceeding for the same executive services they had rendered before. At the very least, courts are justified in demanding a clear indication of Congressional purpose before inflicting what we have recognized as so harsh a forfeiture, Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862, 868 (2 Cir. 1959), cert. denied, 361 U.S. 862, 80 S.Ct. 121, 4 L.Ed.2d 103 (1959), upon persons who, despite their fiduciary obligations, had been free to buy or sell stock of the corporation before the Chapter X proceeding was contemplated, Chapter X proceeding was contemplated, 63 S.Ct. 454, 87 L.Ed. 626 (1943); Manufacturers Trust Co. v. Becker, 338 U.S. 304, 312-314, 70 S.Ct. 127, 94 L.Ed. 107 (1949), and would expect to remain with it thereafter.
 
 
 15
 If it be contended against this that the president and the general manager of a debtor in possession bear essentially the same relation to creditors and stockholders and have the same access to inside information as a trustee, and that since 249 applies to the latter, it must therefore apply to the former, there are several answers-- apart from the sufficient one that this is not what the words say. One is that in a closely related respect Chapter X clearly distinguishes between what is demanded of a trustee and what is expected of officers of a debtor in possession. Section 156, 11 U.S.C.A. 556, requires that the trustee (other than the additional trustee whom the judge may appoint 'to operate the business and manage the property of the debtor') must be 'disinterested,' which, under 158(1), 11 U.S.C.A. 558(1), he is not if 'he is a creditor or stockholder of the debtor.' No such requirement was or practically could be imposed on officers of the debtor; instead, for that very reason, 168, 11 U.S.C.A. 568(1), authorizes the judge to 'appoint a disinterested person as examiner to prepare and file a plan' and to perform the investigative duties imposed upon the trustee by 167(1) to (5), 11 U.S.C.A. 567(1-5). Also the argument under consideration proves to much. A salaried employee of the trustee entrusted with general supervision of the debtor's affairs, whether or not an officer of the debtor employed under 191, would have the same access to inside information as the president or general manager of a debtor in possession; yet one would have to press hard, indeed, to read 249 as including him.
 
 
 16
 Our ruling that 249 is inapplicable to an officer or supervisory employee of a debtor in possession in no way entails as a consequence that a bankruptcy court is helpless to deal with breaches of fiduciary obligation on his part. This Court has held, in the case of a person clearly within 249, that failure to establish the purchase or sale that would trigger that section's denial of all compensation does not preclude or, indeed, relieve the court from taking account of related breaches of fiduciary obligation in fixing the amount, Berner v. Equitable Office Building Corp., 175 F.2d 218 (2 Cir. 1949). By the same token the court may consider, in an appropriate case, that a purchase or sale of stock by a person not within 249 requires reduction or even elimination of compensation from an estate under the court's supervision, or removal of such person from office. See American United Mutual Life Ins. Co. v. City of Avon Park, 311 U.S. 138, 146-147, 61 S.Ct. 157, 85 L.Ed. 91 (1940); see also In re Midland United Company, 159 F.2d 340 (3 Cir. 1947). The distinction is that such a ruling would rest upon an exercise of judicial discretion, taking appropriate account of all relevant circumstances, rather than on the automatic forfeiture which the judge here thought the statute required. Nor is this all. Despite a statement to the House Judiciary Committee that 249 was being presented in lieu of a proposal 'that if a person in a fiduciary capacity uses inside information to purchase or sell securities, then he shall be penalized,'[6] we cannot believe enactment of 249 curtailed the inherent power of bankruptcy courts to impose remedies of a totally different sort for breach of fiduciary obligations, such as scaling down claims to the amounts paid or requiring an accounting for profits, even for persons subject to 249 and surely for persons who are not, and again whether the final clause of 212, 11 U.S.C.A. 612, is or is not literally applicable.[7] Decisions under 77B providing for such a scale-down as against directors of a debtor in reorganization, In re McCroy Stores Corp., 12 F.Supp. 267, 269 (S.D.N.Y.1935), and In re Philadelphia & Western Ry., 64 F.Supp. 738 (E.D.Pa.1946), were noted with apparent approval in Manufacturers Trust Co. v. Becker, supra, 338 U.S. at 314, 70 S.Ct. 133 fn. (1949); see also In re Norcor Mfg. Co., 109 F.2d 407, 411 (7 Cir. 1940) and In re Los Angeles Lumber Products Co., 46 F.Supp. 77 (S.D.Cal.1941). Cf. Mosser v. Darrow, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). Nothing we have said is to be construed as concluding that Weinstein and Fried did breach fiduciary obligations in the transactions of which appellees complain; indeed, the judge's denial of 'recoupment' would indicate he did not regard their conduct as having been very iniquitous.
 
 
 17
 Appellants attack also the portions of the order approving Philip's election as a director and as treasurer and requiring his countersignature of checks; they assert that Philip's true allegiance is to Rehrig, who, they claim, is seeking to make a lease unfavorable to the debtor's interests.
 
 
 18
 The volume and character of the papers in this proceeding leave little doubt that directors' meetings attended by Weinstein and Philip are scarcely likely to set new records in pastoral harmony. However, Pennsylvania, where the dobtor is incorporated, considers a minority's right to representation on a corporate board of directors so vital that it has enshrined cumulative voting in its Constitution, Art. XVI, 4, P.S.-- although both proponents and opponents of that system recognize that the presence of sharply conflicting interests among the directors may result. See Williams, Cumulative Voting for Directors (1951), c. X; Baker and Cary, Cases and Materials on Corporations (3d ed. unabridged 1959), pp. 209-210; Young, The Case for Cumulative Voting, 1950 Wis.L.Rev. 49, 53; Axley, The Case Against Cumulative Voting, 1950 Wis.L.Rev. 278, 279. Consistent and vigorous advocacy of policies honestly deemed by the majority to be seriously adverse to corporate interests would thus not be a ground for disqualifying a minority director in Pennsylvania, although a record of actual obstruction would be, Markovitz v. Markovitz, 336 Pa. 145, 8 A.2d 46, 124 A.L.R. 359 (1939). To be sure, a court of bankruptcy is not bound to approve a director simply because he has been elected to represent a minority through cumulative voting, any more than it would be to approve one elected by a majority with or without such procedures. Still, some weight ought be given to Pennsylvania's policy and, even apart from that, the stockholders' election of directors 'will not be disturbed unless a clear case of abuse is made out' or it appears that judicial veto is required 'to the end that the property may be safely and effectively managed.' In re J. P. Linahan, Inc., 111 F.2d 590, 592 (2 Cir. 1940). As one of three directors Philip will have no power to force the making of a lease to Rehrig, and this presumably would require the court's approval in any event. There is nothing as yet to show that as a director, or as treasurer, Philip will obstruct the operation of the business in the private interest of the Rehring group as distinguished from acting as its voice and ears; we read 188 as emplowering the court to remove him if he should. On the other hand, the requirement of Philip's countersignature of all checks might well jeopardize the successful functioning of the business; indeed, it is not at all clear that the judge meant this to continue beyond the appointment of a new general manager in place of Fried.
 
 
 19
 The order is therefore reversed save for its approval of the election of directors and officers, as to which it is affirmed.[8]
 
 
 
 [1]
 Fried had previously been a director and secretary-treasurer; he resigned these offices on June 29, 1953
 
 
 [2]
 The judge had previously said orally at the hearing on June 14, 1960, that 'in view of the Court's disposition of the petition for termination of compensation to Messrs. Weinstein and Fried, they can no longer function in their respective offices * * *'
 
 
 [3]
 75th Cong. 1st Sess., Hearings before the Committee on the Judiciary of the House of Representatives on H.R. 6439, pp. 183-184
 
 
 [4]
 Judge (then SEC Commissioner) Frank, 75th Cong.2d Sess., Hearings before the Committee on the Judiciary of the Senate on H.R. 8046, p. 99, quoted in 6 Collier, Bankruptcy (14th ed. 1956), p. 1994, fn. 3
 
 
 [5]
 Reversal of the order of removal carries with it so much of the order as authorized Philip to supervise the debtor's affairs pending approval of a general manager to replace Fried
 
 
 [6]
 Supra note 3
 
 
 [7]
 Section 212 permits the court, in the case of 'an agent, attorney, indenture trustee, or committee,' to 'limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding under this chapter to the actual consideration paid therefor.'
 
 
 [8]
 Nothing herein is to be deemed to preclude the judge from taking any further action with respect to directors or officers that he may find appropriate as a result of our decision in Docket Nos. 27000 and 26962